**UNITED STATES of America,
Appellee,**

v.

**James G. SORCE, Jr., Appellant.**

No. 8474.

United States Court of Appeals
Fourth Circuit.

Argued June 6, 1962.

Decided Sept. 11, 1962.

Harold Buchman, Baltimore, Md.
(Lawrence B. Coshnear, Baltimore, Md.,
on brief), for appellant.

Arnold M. Weiner, Special Asst. to the U. S. Atty. for the D. of Maryland (Joseph D. Tydings, U. S. Atty. for the D. of Maryland, on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Chief Judge.

This appeal from a conviction under the mail fraud statute challenges, primarily, the venue of the trial in the United States District Court for the District of Maryland.

The First Capitol Savings and Loan Association, now in bankruptcy, was a Maryland corporation organized at the instigation of the defendant. It maintained offices in Belleville, New Jersey, near where the defendant lived, as well as in Baltimore, Maryland. A New Jersey man, Maurice Moriarty, was the president of the Association, but he was only a figurehead, having a full-time unskilled job elsewhere loading and unloading trucks. Incontestably, the defendant was the sole dominating force in the affairs of the Association throughout its existence.

Howard Rothacker, the victim of the fraud charged to the defendant, resided in Hazelton, Pennsylvania. Early in 1959, Rothacker wrote to the Association in response to an advertisement the defendant caused to be published in a Philadelphia newspaper, soliciting accounts for the Association. Rothacker was attracted by the very high interest rate offered, but desired insurance to cover his deposits. A series of letters passed between Rothacker in Pennsylvania and the defendant in New Jersey, writing over Moriarty's signature. It was represented to Rothacker, first, that negotiations were in progress with an insurance company to insure his deposits and later, when these negotiations fell through,

that federal bonds had been purchased by the Association and set aside in special escrow or trust to cover the deposits. The evidence presented to the jury showed, however, that during most of the period in question the defendant had no such bonds in his possession, and that when he had bonds they were in no way segregated for Rothacker's protection but remained under the sole control of the defendant.

In reliance on the false representations made to him, Rothacker mailed to the Association's Maryland office a series of deposits aggregating in excess of $40,-000.00. When the Association later went into bankruptcy, Rothacker found that his deposits were not secured by federal bonds. He was thus forced to share the assets of the Association with the other general creditors, and consequently suffered a heavy financial loss.

■ On these facts, the defendant contends that Maryland was not the proper venue for his trial. It is a settled constitutional principle that venue in a criminal case may be laid in any district where the crime was committed.[1] In deciding in any particular case the propriety of the venue, it is necessary to determine whether the applicable venue statute permits an indictment in that district, and of course whether the crime was committed there. Contrary to the defendant's contentions, we find that both tests are met in the present case.

■ The mailings which are the subject of the six-count indictment in this case are not the preliminary correspondence between the defendant in New Jersey and Rothacker in Pennsylvania, which set the trap, but the mailings by Rothacker, enclosing his checks, to the Association in Maryland in response to the fraudulent inducements of the defendant. In order to support a conviction under the mail fraud statute, 18 U.

1. Travis v. United States, 364 U.S. 631, 634, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); United States v. Cores, 356 U.S. 405, 407, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958); Johnston v. United States, 351 U.S. 215, 220–221 (1956); United States v. Johnson, 323 U.S. 273, 275 (1944).

S.C.A. § 1341,[2] it is not necessary that the false representations were themselves transmitted by mail, nor that the defendant personally received the mail from his victim. It is sufficient that the use of the mails was caused by the defendant in furtherance of his fraudulent scheme.[3] In this case, the defendant's aim was to induce Rothacker to send his savings to the Association in Maryland. The receipt of the mail there was an integral part, indeed the ultimate objective, of the defendant's fraudulent scheme. Consequently, while criminal acts were also committed in New Jersey and in Pennsylvania, it is certain that the federal offense charged was also committed in Maryland.

Having established that the crime took place in Maryland, there is no doubt that the requirements of the statute for establishing venue in that district were met. 18 U.S.C.A. § 3237(a). It provides in pertinent part:

"Any offense involving the use of the mails * * * is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or *into which such * * mail matter moves.*" (Our italics).

As the fraudulently induced mail was sent by Rothacker *into* Maryland, the case falls within the express terms of the statute.

█ The defendant argues that the trial should have been held in New Jersey where he lives and where, he claims, most of the witnesses and records were to be found. However, the defendant did not move in the District Court under Rule 21(b) for a transfer of the case to another district. Fed.R.Crim.P. 21 (b), 18 U.S.C.A.[4] The asserted grounds are not sufficient to defeat venue once it has been shown that the constitutional and statutory prerequisites have been met.

█ A number of other issues are raised, but the record lends no support to any of them. For example, the defendant argues that unfavorable publicity in the Baltimore newspapers directed against savings and loan associations prevented him from having a fair trial before an impartial jury in the District of Maryland. However, the newspaper articles submitted to the District Court are not such as would automatically preclude a fair trial, and the defendant made no attempt when the jury was empaneled to show that any juror had been influenced by the publicity.[5]

2. "§ 1341. Frauds and swindles
"Whoever, having devised * * * any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * * for the purpose of executing such scheme or artifice or attempting so to do * * * knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

3. See Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944); Marvin v. United States, 279 F.2d 451, 454 (10th Cir. 1960); Williams v. United States, 278 F.2d 535, 538 (9th Cir. 1960); Gregory v. United States, 253 F.2d 104, 109–

110 (5th Cir. 1958); Stevens v. United States, 227 F.2d 5 (8th Cir. 1955). Compare Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960).

4. "Rule 21. Transfer from the District or Division for Trial
* * * * * * *
"(b) Offense Committed in Two or More Districts or Divisions. The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

5. See United States v. Milanovich, 303 F.2d 626 (4th Cir. 1962).

■■ Finally, it is urged that the District Judge was excessive in his questioning of the defendant. The record shows, however, that the Judge interposed his questions only after the cross-examination of the defendant became disjointed and confusing because of his persistent failure to reply to questions in a straightforward manner. When a defendant or other witness gives unresponsive, evasive, and self-contradictory answers, the judge is not obliged to remain inert. It may become his duty to intervene.[6] Here the Judge did not abuse his discretion in asking questions designed solely to clarify the facts for the jury, and we find nothing unfair in the substance or form of the interrogation. The Judge merely exposed the falsity of the defendant's brazen insistence that he had, in accordance with his representation, set aside bonds in trust for Rothacker, when in truth he had acquired no bonds whatever when he first made the representation and later, when he did acquire bonds, they were in an amount less than represented and at no time removed from his own absolute control or put within the reach of Rothacker or anyone else for his protection.

■ A careful examination of the entire record convinces us that the defendant had a fair trial, conducted impartially and without error, that the case was submitted to the jury under proper instructions, and that its verdict of guilty was the only possible one.

Affirmed.

6. See United States v. DeSisto, 289 F.2d 833 (2d Cir.1961); Hoffler v. United States, 231 F.2d 660 (4th Cir. 1956).