In the Matter of FIRST CAPITOL SAVINGS & LOAN ASSOCIATION, Inc.
No. 11206. Bankruptcy

United States District Court
D. Maryland.
Dec. 31, 1963.

George I. Puhak, Hazleton, Pa., for Rothacker.

Theodore C. Waters, Jr., Baltimore, Md. (Benjamin C. Howard, Baltimore, Md., on the brief), for Trustee in Bankruptcy.

THOMSEN, Chief Judge.

Howard Rothacker (claimant) filed a "preferred secured claim" for $33,464.66 in this bankruptcy proceeding, claiming as security certain Federal Home Loan notes in the amount of $40,926, which he contends the bankrupt held as security for his deposit account.[1]

After a hearing, at which testimony was taken, the Referee held that the claim was not entitled to secured or preferred status, since claimant was unable to trace the alleged trust funds or any proceeds thereof into the hands of the Trustee in Bankruptcy. The Referee ordered that the claim be allowed in the amount of $33,464.66 as a general unsecured claim. From that decision claimant filed a petition for review. At the hearing on that petition both sides presented additional evidence, much of it documentary, which throws more light on the transactions. As a result, the Court has concluded that the decision of the Referee should be modified to allow claimant $6,150 as a secured or preferred claim, reducing his general unsecured claim to $27,314.66.

First Capitol Savings & Loan Association (First Capitol) was a Maryland corporation, which was controlled, managed and mismanaged by James W. Sorce, Jr. American Seal Savings and Loan Association (American Seal), another Maryland corporation, was also controlled, managed and mismanaged by Sorce.

A petition in bankruptcy against First Capitol was filed herein on July 22, 1960.

After a hearing it was adjudicated a bankrupt on September 30, 1960, despite the provisions of sec. 4, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 22, sub. b.[2] Walter E. Black, Jr., was appointed Receiver in Bankruptcy and later became the Trustee in Bankruptcy. American Seal was adjudicated bankrupt later, and Black became its Trustee. Several months before, on June 30, 1960, Black had been appointed Conservator of First Capitol and Conservator of American Seal by this Court in a civil action brought against the two associations by the Securities and Exchange Commission. It has never been possible to determine who owned the stock of these associations or of their related corporations, because all officers claimed the benefit of the Fifth Amendment or said they did not know.

Claimant was a depositor in First Capitol; he opened his account in April 1959, his balance on October 1, 1959, was $20,612.50; it was increased in January 1960 to $22,796.40 and in February 1960 to $31,937.90. The amount of his deposit at the time of the bankruptcy was $33,464.66.

On October 9, 1959, Maurice F. Moriarity, the figurehead president of First Capitol, wrote Rothacker a letter in which he said: "I have discussed this situation with my Board of Directors and I have been authorized to guarantee this account by our Association in that I am authorized to hold in our bank as special trustee for Howard Rothacker, the sum of $10,000.00 in the form of U. S. Treasury Certificate in the amount of $10,000.00 that in the event of any financial difficulty of our Association I would be empowered to deliver to you this U. S. Treasury Certificate to liquidate your account."

---

1. The claim was apparently filed by claimant for the benefit of himself and his wife. The deposit account stood in his name, the passbook in their joint names. However, since all the papers refer to his claim and his account, they will be so treated in this opinion.

2. This Court found that although First Capitol purported to be a savings and loan association, it was not in fact being operated as a savings and loan association.

On January 26, 1960, Moriarity, as president, wrote Rothacker another letter, saying: "I hold in special escrow earmarked for you, thirty thousand dollars in Federal Home Loan Bank Notes. If you so desire, we can increase this amount to provide for $40,000.00."

A third letter, dated February 16, 1960, from Moriarity, as president, to Rothacker stated: "I have also been authorized to assure you that I hold in trust forty thousand dollars of Federal Home Loan Bank Notes to further guarantee or insure your account."

Meanwhile, on February 15, 1960, Chemical Corn Exchange Bank of New York, had sold to Irvington State Bank of Irvington, New Jersey, five Federal Home Loan Bank notes, dated October 15, 1959, due July 15, 1960, for $40,200, plus $726 interest, a total of $40,926. According to the records of the Irvington State Bank, it purchased these notes for First Capitol and was paid therefor on February 16, 1960, by two checks of First Capitol, each for $20,463, both payable to Irvington State Bank, one drawn on First Capitol's account in that bank and the other drawn on First Capitol's account in the Fidelity-Baltimore National Bank, Baltimore, Maryland.

On February 24, 1960, Moriarity, as the figurehead president of First Capitol, wrote a letter to the Irvington State Bank acknowledging receipt "of the Federal Home Loan Bank notes purchased by our institution" and authorizing delivery of the notes to the bearer of the letter. The five notes—#129646, $10,000; #129139, $10,000; #129650, $10,000; #74238, $5,000; #74239, $5,000—were delivered to an employee who worked for both First Capitol and American Seal. On February 29, American Seal drew its check for $20,470, payable to Millburn-Short Hills Bank, which was deposited in that bank by First Capitol Mortgage Company (the Mortgage Company), a subsidiary of First Capitol Savings & Loan Association.[3] No books of

the Mortgage Company have ever been discovered, but the books of American Seal show the $20,470 check, matched by a deposit showing the purchase of $20,000 notes, plus $470 interest. The books of First Capitol Savings & Loan Association show the issuance of one $20,463 item credited to cash and debited to notes. Its books do not show the purchase of the other $20,000 note.

On February 29, 1960, Millburn-Short Hills Bank issued two safekeeping receipts. One receipt certified that First Capitol Savings & Loan Association had deposited with the bank for safekeeping Federal Home Loan Bank notes numbered 129646 and 129650, totaling $20,000, "to be delivered upon the order of the depositor, or his legal representative or attorneys, on the return of this certificate". The receipt stated that it was "non-negotiable" and "non-transferable". The following appears in the lower left-hand corner: "I concur in all the foregoing and agree to each of the above conditions. James G. Sorce, Jr." In the lower righthand corner the following appears: "I hereby acknowledge receipt of the above described property, this 29 day of Feb., 1960. James G. Sorce, Jr."

An exactly similar release was issued on February 29, 1960, to American Seal Savings and Loan Association covering the Federal Home Loan Bank notes numbered 129139, 74238 and 74239, totaling $20,000. Sorce again signed as depositor, and again under the same date acknowledged receipt of the bonds.

No entry of any sort was ever made on the books of First Capitol Savings & Loan Association or on the notes themselves showing that they were earmarked to secure Rothacker's deposit.

None of these notes ever came into the possession of the conservator, receiver or trustee for either First Capitol or American Seal. Moreover, there is no evidence that the Treasury Certificates referred to in the October 9, 1959 letter were ever purchased. No such certificates came into the possession of the

---

**3.** The Mortgage Company was also controlled, managed and mismanaged by Sorce.

conservator, receiver or trustee for either association.

Prior to May 1960, Federal Home Loan Bank notes Nos. 74238 and 74239 for $5,000 each, two of the notes covered by the American Seal receipt, were given by Sorce to Charles Silber, of Newark, New Jersey, as payment for attorney's fees rendered and to be rendered. Silber retained $4,500 of the proceeds of the notes for fees and $500 for disbursements and expenses, and on May 25, 1960, paid the other $5,000 to Walter D. Van Rycker, another attorney in Newark. By petition filed herein on October 13, 1961, Black, as Trustee in Bankruptcy of First Capitol, sought to recover from Silber the sum of $10,400 on the ground that the transfer of the two notes to him constituted a voidable preference or transfer. On October 12, 1961, Black filed a petition in the civil action brought against First Capitol by the SEC, asking the Court to rescind a prior order authorizing the payment to Silber of $4,500 for services rendered to Black as Conservator of First Capitol, on the ground that the payment was authorized and made without knowledge of the transfer of the two $5,000 notes to Silber. These two controversies were later compromised and settled by Silber paying to Black as Trustee of First Capitol the sum of $4,000. Rothacker was given notice of the proposed settlement and made no objection thereto.

Note No. 129139 for $10,000 was disposed of by Sorce as follows. Maryland Acceptance and Finance Company had an account with First Capitol showing a deposit of about $8,000. George Grandwetter, the president of Maryland Acceptance, wanted to withdraw the deposit, but at the suggestion of Sorce, borrowed $10,000 fom First Capitol, giving the passbook as security. First Capitol delivered Note No. 129139 to Maryland Acceptance in lieu of cash. Grandwetter negotiated this note to Equitable Credit and Discount Company of Philadelphia, and the note was paid to Equitable. At the time of bankruptcy, the books of First Capitol showed that Maryland Acceptance was a depositor in the sum of $7,500 and that it owed First Capitol approximately $10,000. The Trustee in Bankruptcy of First Capitol disposed of the account receivable from Maryland Acceptance, which is no longer in business, for $2,150, by sale along with other assets. Notice of the sale was given to Rothacker, who did not object to its ratification.

The remaining notes (Nos. 129646 and 129650 for $10,000 each) were turned over to Grandwetter by Sorce. Grandwetter delivered the notes to his wife, who sold them through Ira Haupt & Company of New York. Sorce signed a document certifying that he received the proceeds of those sales from Mrs. Grandwetter on June 11, 1960, and further stating that he owned the notes.

Sorce has made various statements at various times about the ownership of the notes and the transactions in which they were involved. He is now serving a prison term for fraud in connection with these notes. See United States v. Sorce, 4 Cir., 308 F.2d 299 (1962). Rothacker bases his claim largely on Sorce's testimony. It has been considered, but is untrustworthy, and does not require findings different from those made above.

The Trustee in Bankruptcy concedes that Rothacker was induced by First Capitol to make deposits upon the written representation that $40,000 in Federal Home Loan Bank notes would be held in trust to guarantee and insure his account. The Trustee in Bankruptcy further concedes that a trust was in fact created, and that whether the trust was express, constructive or a trust ex maleficio is not significant in this case. Accordingly, the sole question before this Court is whether claimant has traced into the hands of the Trustee in Bankruptcy the trust property or any part thereof in its original or substituted form. Collier on Bankruptcy, 14th ed., Vol. 3, ¶ 64.02, p. 2062, and Vol. 4, ¶ 70.25, pp. 1202–1225.

As Collier states, op. cit., Vol. 4, p. 1215 et seq.:

"Once the trust relationship has been established, one claiming as a *cestui que trust* thereunder must identify the trust fund or property in the bankrupt estate, and, if such fund or property has been mingled with the general property of the bankrupt, sufficiently trace the trust property. In other words, to sustain a claim to trust property or to an equitable lien thereon, the claimant must depend upon his ability to identify the property in its original or substituted form in the hands of the bankruptcy trustee. The basic idea of the trust doctrine as applied in bankruptcy is a fair and reasonable identification of the property or fund so as not to harm other creditors. It is not enough, therefore, to show merely that the funds or property came into the bankrupt's hands or went into the bankrupt's business, or, by the better view, even that the funds or property are contained somewhere within the bankrupt's estate. If the trust fund or property cannot be identified in its original or substituted form, the *cestui* becomes merely a general creditor of the estate, for the prevailing rule in trusts is that 'a beneficiary who cannot find the trust property has no lien or charge spread over the entire estate of the faithless trustee'. The same result will accrue where the trust property has been disposed of or dissipated in such manner as to leave nothing in its place. Moreover, it has been stated that if the claimant endeavors to trace the property and shows that the proceeds thereof were used to purchase other property, now worthless, the *cestui* must accept such worthless property. As indicated previously, the claimant must assume the burden of ascertaining and tracing the trust property, and where it is alleged that such property has been converted into other property in the hands of the bankrupt, the claimant has the burden of tracing the trust property therein."

These principles are so well established that it is unnecessary to cite other authorities to support them.

It is clear that the Trustee in Bankruptcy never had either title to or possession of the notes themselves. It is equally clear that the only assets in the hands of the Trustee in Bankruptcy which can be fairly characterized as the trust property in "substituted form" are (1) the sum of $4,000 recovered from Silber and (2) the sum of $2,150 representing the proceeds of sale of the account receivable from Maryland Acceptance.

Although there is some question whether Rothacker is entitled to the entire $4,000 recovered by the Trustee in Bankruptcy from Silber, since it represented a settlement of more than one claim, it seems fair and equitable under all the circumstances that Rothacker should receive the entire proceeds of that settlement. He should also receive the $2,150 representing the proceeds of the sale of the claim against Maryland Acceptance.[4]

Rothacker's argument that the Trustee in Bankruptcy should have pursued these

---

4. An alternative theory with respect to the Maryland Acceptance transaction would be to treat the deposit account of Maryland Acceptance in the amount of $7,500, which was put up as collateral for the "loan" represented by note no. 129139, as having replaced note no. 129139 as trust property to which Rothacker is entitled. However, since the evidence shows that the total dividends payable to depositors and other general creditors in this bankruptcy proceeding will probably be less than 33⅓%, the net result would not be very different whether Rothacker (a) is given the $2,150 cash at this time or (b) is allowed to receive whatever dividends are paid on the Maryland Acceptance deposit of $7,500. He would have to credit either against his claim as a general creditor. It seems fairer, simpler and more in accordance with the facts to allow Rothacker the $2,150 cash at this time.

claims more aggressively is not supported by the evidence. Moreover, notice was given to Rothacker of the proposed settlement with Silber and of the sale of the Maryland Acceptance account before those transactions were ratified, and he made no objection to such ratification.

The decision of the Referee is hereby modified to allow the claim of Howard Rothacker as a secured claim in the amount of $6,150, and as a general unsecured claim in the amount of $27,314.66.