**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dorwin MARINE, Defendant-Appellant.
No. 17061.**

United States Court of Appeals
Seventh Circuit.

July 7, 1969.

Rehearing Denied Aug. 22, 1969.

Joseph A. Lamendella, David P. Schippers, Jerome Rotenberg, Chicago, Ill., for appellant; Schippers, Betar & Lamendella, Chicago, Ill., of counsel.

Thomas A. Foran, U. S. Atty., Thomas N. Todd, Asst. U. S. Atty., Chicago, Ill., for appellee; John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before SWYGERT and CUMMINGS, Circuit Judges, and ESCHBACH, District Judge.*

ESCHBACH, District Judge.

Defendant Dorwin Marine was convicted on February 16, 1968, after a trial by jury, of conspiring to use the mails in furtherance of a scheme and artifice to defraud and obtain money by false and fraudulent representations, in violation of 18 U.S.C. §§ 371 and 1341. Defendant brings this appeal, contending that reversible error was committed in the admission into evidence of another alleged crime, in the failure to give certain limiting instructions, in the insufficiency of proof beyond a reasonable doubt that the mails were used in furtherance of the scheme, and in the denial of effective assistance of counsel.

The facts of the record taken in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), are as follows: The Rocket Finance Company (hereinafter referred to as Rocket) was a finance company specializing in the financing of retail automobile purchase contracts. The defendant Dorwin Marine served as vice president and general manager during the period of December 30, 1961 to July 30, 1962, covered by the indictment. Carl Taleen was, during this period, principal stockholder and president of Rocket. J. B. Lawson, a co-conspirator convicted with Marine in joint trial, was a used car dealer who discounted fraudulent automobile sales contracts to Rocket with recourse. Lawson died while this appeal was pending. Rocket and defendant Marine also during this period processed other fraudulent automobile sales contracts with one John Tellone, another used car dealer.

In processing an installment contract purchased from an auto dealer, Marine approved all contracts, and either Marine or Carl Taleen would sign the contract for Rocket, and Taleen would sign a note to the bank. The contract was then submitted to either the City National Bank and Trust (later Continental Illinois National Bank) or Drovers Bank as part collateral for loans from the bank, together with pledges of the automobile title and assignment of automobile insurance policies. The titles and insurance policies were retained in the Rocket office. Numerous bank officials and a former employee of Rocket testified that the great bulk of sales contracts submitted to the banks were transmitted through the mails to the banks' commercial loan departments.

In July of 1962, both of the banks involved caused audits to be made of Rocket's records, since titles and insurance assignments were missing on the contracts they had taken as collateral for loans. The subsequent investigation revealed that Lawson had submitted at least 19 contracts to Rocket which, he admitted during the course of the trial, were fraudulent. John Tellone testified at trial that he placed at least 50 or 60

* District Judge from the United States District Court for the Northern District of Indiana, sitting by designation.

fraudulent sales contracts with Marine during a three-year period, and his testimony revealed that the mechanics of such transfers were largely similar to those involved in the Lawson transfers to Marine.

## ADMISSION OF EVIDENCE OF EXTRA-INDICTMENT OFFENSES

Defendant first contends that the district court committed prejudicial error in the admission into evidence of the fraudulent auto sales transactions between defendant and John Tellone, which tended to show the commission of another crime by the defendant. He argues that such evidence was both highly prejudicial and of little probative value, and that such evidence had the effect of causing the jury to convict Marine of the crime for which he was on trial because they were led to believe that he was guilty of the other crime.

> [T]he law must protect against the human tendency to conclude that birds, like words, are frequently judged by the company they keep—*noscitur ex socio*. But despite the adverse implications—often spectacular and occasionally inflammatory—from proof showing commission of some crime other than the one being tried, the law does not accord automatic immunity from such evidence. Care must, of course, be taken to keep such evidence in proper bounds. If it has no connection with any elements of the offense being tried, it may not be introduced merely to cast the defendant in a bad light. * * * But it is essentially a question of relevance. And it is now clear that evidence relevant to prove one crime does not become inadmissible because it also proved another. Roe v. United States, 316 F.2d 617, 623 (5th Cir. 1963) (citation omitted).

██ The Government offered evidence of the Tellone-Marine transactions to show Marine's knowledge and intent, and the trial court, in its final instructions to the jury, clearly stated that intent may be so determined from, among other things, similar transactions. There can be little doubt, and defendant does not argue to the contrary, that the Tellone-Marine transactions were strikingly similar to the transactions with Lawson for which Marine was indicted and convicted. Defendant contends, however, that he had not, either in his claims or statements of facts which he would seek to prove, "sharpened" the issue of intent by asserting that the act charged was done innocently or by accident or mistake. The defendant overlooks the fact, however, that proof of specific intent to defraud is an essential element of the offense here involved and that the Government had the burden of proving such specific intent beyond a reasonable doubt regardless of whether or not defendant, in his opening statement, asserted his innocence or culpability as to that issue.

 Moreover, the defendant himself clearly and forcefully "sharpened" the issue of intent when he subsequently testified that he did *not know* "until it all exploded" that the installment contracts transferred by the co-conspirator Lawson and by John Tellone were fraudulent. This court has held in similar cases that evidence sought to be introduced of a similar offense is admissible if it bears "a strong resemblance" to the pattern of the offense charged, United States v. Iacullo, 226 F.2d 788, 793 (7th Cir. 1955), cert. denied, 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839, or is "in remarkable conformity" with, United States v. Accardo, 298 F.2d 133, 137 (7th Cir. 1962), or "occurred very shortly before * * * [or] very shortly after" the offenses charged, United States v. Cobb, 397 F.2d 416, 418 (7th Cir. 1968), cert. denied, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260. Such evidence is highly relevant to the issue of knowledge and intent, as tending to show a consistent pattern of conduct, Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 93 L.Ed. 919 (1949), and therefore the district court did not abuse its discretion in receiving such

evidence. It may be noted that Rule 4–04(b) of the Proposed Rules of Evidence for the United States District Courts (March 1969 Preliminary Draft) provides that evidence of other crimes may be admissible to prove intent.

## COURT'S FAILURE TO GIVE LIMITING INSTRUCTIONS

Defendant next contends that the district court committed plain error under Fed.R.Cr.P. 52(b) by failing to instruct the jury at the time of its admission that the evidence of the Tellone-Marine transactions was limited only to the question of intent. Defendant admits that his trial counsel failed to observe the requirements of Fed.R.Cr.P. 30, which provides in part that

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

As noted previously, the district court did instruct, sua sponte, in its final charge to the jury that specific intent may be determined from similar transactions. This instruction, coupled with defense counsel's failure to either tender a limiting instruction himself or to take exception to the foregoing general instruction, cannot be held to be an error which is "substantial and capable of resulting in miscarriage of justice to warrant the reversal of a judgment of conviction based on ample evidence." United States v. Raub, 177 F.2d 312, 315 (7th Cir. 1949).

## ADMISSION OF CO-DEFENDANT'S EXTRAJUDICIAL ADMISSION

Defendant next contends that it was plain error to admit into evidence the following testimony of Carl Taleen concerning a conversation he had with co-defendant Lawson:

"Q. What did he say?

"A. He said, 'Well, I had a lot of bankruptcy, and I was out of money, and I couldn't make the payments. So I suggested to Marine that I see you and see if you wouldn't loan me some money temporarily until I could get over this. He said, Mr. Marine says, 'Don't do that. Put through some more phony contracts, and when you get in better shape you can pay them off and make them up.' "

Defendant insists that the admission of this testimony constituted "plain error * * * affecting substantial rights" of the defendant within the purview of Rule 52(b), notwithstanding the admitted fact that defendant's counsel made no objection at the time of its admission. Defendant seeks to avoid the effects of his failure to abide by the requirements of Rule 30 by relying on the recent United States Supreme Court decision in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), characterizing that decision as holding that the admission of a *confession* by a *co-conspirator* which implicates a co-defendant is in itself prejudicial error incurable by even the clearest instruction to the jury.

We hold, however, that *Bruton* is inapposite to the instant case for the following reasons. One, the declarant in *Bruton* exercised his right to remain silent under the Fifth Amendment by refusing to testify. Here, the declarant Lawson, as well as Marine, took the stand and testified extensively, and each subjected the other, as well as Carl Taleen, to vigorous cross-examination. Thus, Marine was in no manner denied his Sixth Amendment right of confrontation, a fact which was vital if not determinative in *Bruton*. Two, no objection was interposed by Marine when the hearsay statement of Taleen was introduced. Thus, the question of the efficacy of a limiting jury instruction is not presented, since the defendant did not ask for, and the court did not give, a limiting instruction. We are mindful of the fact that *Bruton*, in one view, may be construed to hold that a limiting instruction in such circumstances is as ineffectual as if no instruction at all had been given and that

in either case the harm to the inculpated defendant is the same. However, the central thrust of *Bruton* as we construe it holds *only* that such limiting instructions or the absence of any limiting instructions

"in the context of a joint trial [are not] an adequate substitute for petitioner's constitutional right of cross-examination." Bruton v. United States, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968).

Here, the question of adequate substitution is not presented since both co-defendants, and particularly the defendant Marine, testified *and* fully exercised their right of confronting the declarant-witnesses against them.

Defendant further relies on this court's recent decision in United States v. Lyon, 397 F.2d 505 (7th Cir. 1968). The facts in that case are, as in *Bruton*, distinguishable from the facts in the instant case because, there, the introduction of the extrajudicial admission of co-defendant Lysczyk implicating the co-defendant Marcia Lyon in their joint trial did in fact effectively deny Lyon's Sixth Amendment right of confrontation, since Lysczyk did not testify at trial. Here, the declarant-witness Lawson did testify, and Marine had the opportunity to and did extensively cross-examine Lawson concerning these extrajudicial statements.

■ Defendant further asserts that his counsel's failure to raise an objection to the introduction of such testimony, under Rule 30, can in no way overcome the fact that the admission of such testimony was "plain error" under Rule 52(b). The court cannot say, on the basis of an examination of the entire record, that the admission of such testimony, coupled with the attendant failure of counsel to object thereto, was of such egregiousness as to "seriously affect the fairness, integrity or public reputation of judicial proceedings." Johnson v. United States, 318 U.S. 189, 200–201, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943). This court has long been aware that de-

fense counsel can and must exercise a wide latitude of discretion in considering whether or not their client's best interests are served by interposing objections to evidence which, at least on its face, may appear to be harmful or prejudicial. And

[w]e know, too, that an able trial lawyer, for one or more of a variety of reasons, will often withhold an objection to the reception of hearsay. When he has done so, and it turns out that the jury's verdict is adverse to his client, the lawyer may not assert that reception as error. United States v. Rosenberg, 195 F.2d 583, 596–597 (2d Cir. 1952).

## EFFECTIVE ASSISTANCE OF COUNSEL

Defendant further contends that he was denied effective assistance of counsel, in violation of the Sixth Amendment, because the district court refused to grant a continuance following trial counsel's protestations on the first day of trial that he was unfamiliar with the facts of the case and unprepared to proceed with the trial. Defendant relies primarily on the colloquy between the court and trial counsel wherein counsel represented to the court that "it would be a complete and utter confusion if I attempted the defense of this matter at this time." Counsel asserted then that his law partner, Mr. Collis, had been preparing and conducting the defense for about six months and was preparing to defend the action at trial when he unexpectedly and suddenly fell ill, leaving trial counsel ill prepared himself to assume the defense.

■ The record reveals, however, that defendant's trial counsel was in fact quite active in the pre-trial preparation and defense, as well as vigorous and assertive in the conduct of the trial proceedings. For example, trial counsel made at least three appearances for defendant before trial, including the filing of a motion for a bill of particulars, a motion for dismissal of the indictment

consisting of ten comprehensive pages, and a personal appearance before the trial judge two days before trial. Moreover, trial counsel represented a key witness, John Tellone, in a previous trial very similar on its facts to the instant action and involving many of the same witnesses and transactions. Finally, a reading of the transcript discloses that trial counsel was both astute and conscientious, and adequately put on witnesses and cross-examined both Government witnesses and the codefendant Lawson. We cannot conclude, therefore, on the basis of this record that defendant was denied effective assistance of counsel.

## PROOF THAT MAILS WERE USED

 Defendant finally contends that the Government's proof failed to establish beyond a reasonable doubt that the mails were in fact used in furtherance of the scheme to defraud. It is not necessary for the Government to prove that defendant actually placed the fraudulent contracts in the mails himself in furtherance of the fraud; it is sufficient if defendant *caused* the mails to be used in furtherance of the scheme. *See* Atkinson v. United States, 344 F.2d 97 (8th Cir. 1965); United States v. Sorce, 308 F.2d 299 (4th Cir. 1962), cert. denied, 377 U.S. 957, 84 S.Ct. 1635, 12 L.Ed.2d 500. Several witnesses, and most particularly Mr. Edward Conrad, an employee in Marine's office, testified repeatedly that the use of the mails was an integral part of the transactions between Rocket Finance Company and the various banks. An examination of the entire transcript, taken in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), reveals that there was substantial evidence upon which a jury could conclude beyond a reasonable doubt that defendant used or caused to be used the United States mails in order to further his fraudulent scheme.

We need not dwell on the additional contentions of defendant, including that the trial court gave conflicting instructions to the jury on the issue of mailing, and that an accumulation of a series of errors operated to deny defendant a fair trial. Considering the instructions as a whole, we find and hold that the jury was fully and properly instructed. In view of the undisputed evidence on this trial and the court's conclusion that no prejudicial errors were committed, we find and hold that defendant was afforded his right to a fair and impartial trial.

The judgment of conviction is affirmed.