**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ralph MASCIO, Jr.,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas COVELLO, Sr.,
Defendant-Appellant.**

Nos. 84–2594, 84–2608.

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1985.

Decided Oct. 3, 1985.

Kenneth L. Cunniff, Chicago, Ill., for defendant-appellant.

John L. Burley, Strike Force, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and WEIGEL, Senior District Judge.[*]

WEIGEL, Senior District Judge.

Defendants Ralph Mascio, Jr. and Thomas Covello, Sr., appeal from a jury verdict convicting them on five counts of mail fraud. 18 U.S.C. §§ 1341–42. Along with Anthony Recchia, who pleaded guilty, they were accused of submitting a false and fraudulent insurance claim to the Economy Fire and Casualty Company for the purported theft of Recchia's car.

The principal evidence at trial consisted of eleven conversations from court-authorized wiretaps on the telephones of Mascio's business, Ashland Auto Wreckers ("Ashland"), and on the telephones of Covello's business, M & J Auto Wreckers ("M & J"). Recchia testified at the trial, as did one David Dabrowski, a former yard worker at M & J.

I.

Recchia testified that he had had engine trouble with his car, a 1979 Pontiac Bonneville, and wanted his car destroyed so he could collect from his insurance company.

On October 7, 1981, he called his cousin Mascio at Ashland, telling him, "Listen, I got a junk car, ah, I'd like to get rid of, can I drop it off by you?" Mascio asked whether the car was totalled and Recchia responded, "No. The engine is shot ... And I want it to disappear." Mascio's response was noncommittal. He indicated he would rather not discuss the matter on the phone.

On Friday, October 9, Mascio called Covello and arranged for Recchia to take the car to M & J, which, unlike Ashland, had a large crusher, capable of rendering an automobile unrecognizable. In describing the car to Covello, Mascio said, "He says, it's perfect, ya know."

The next day, Mascio gave Recchia the address for M & J and specifically instructed him to "ask for Tom."[1] He told Recchia, "before you leave call me and I'll make sure he's there. * * * But he's set for Monday, okay?"

On Monday, October 12, through a series of telephone calls, Mascio coordinated the delivery of the car to Covello at M & J. Recchia took his car to M & J and left it there. He received neither a receipt nor any payment. He did not remove the license plates nor surrender title. Someone at M & J told him to wait two or three days before reporting his car stolen.[2]

On Tuesday, October 13, Covello called Mascio. Mascio asked if Covello had certain auto parts on hand and was told, "Well we crush all this stuff here." When Mascio asked, "Why don't you send 'em here."

---

[*] The Honorable Stanley A. Weigel, Senior District Judge of the Northern District of California, is sitting by designation.

[1.] David Dabrowski testified that no person named Tom, other than Thomas Covello, worked at M & J in October 1981.

[2.] While Recchia could not testify with certainty that it was Covello who said this, Recchia did testify that the person was, "Probably someone named Tom."

Covello responded, "Well uh they're like the Bonne, ya know?" [3]

A few days later Recchia's wife, apparently unaware of the circumstances surrounding the disappearance of the car, reported it stolen. The mails were used in submitting a false police report to the insurance company, in surrendering the title and keys of the car as though it were a legitimate theft loss, and in receiving payment from the insurance company.

## II.

Mascio and Covello both argue that the government's evidence was insufficient to prove that they acted with the requisite intent to commit fraud.

■ Intent is a critical element of the mail fraud offense. The government must prove that a defendant knowingly participated in a fraudulent scheme and that use of the mails to further that scheme was reasonably foreseeable. *See Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954).

It is well settled that "[c]ircumstantial evidence may be used to prove a defendant's intent; indeed, that usually is the only evidence available to show intent." *United States v. Starnes,* 644 F.2d 673, 676 (7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981); *see also United States v. Haldeman,* 559 F.2d 31, 115–16 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Furthermore,

> The issue of intent is clearly a question of fact and as such we do not conduct an independent review of the facts, but only analyze the evidence presented at trial to determine if it was sufficient to support the jury's finding.

*United States v. Lindsey,* 736 F.2d 433, 436 (7th Cir.1984); *see also United States v. Wormick,* 709 F.2d 454, 460 (7th Cir. 1983) ("[I]n assessing the sufficiency of the evidence on a criminal appeal, a reviewing court will view the evidence in the light most favorable to the government....").

■ There was sufficient evidence to support both Mascio's and Covello's convictions.

The tape-recorded telephone conversations between Recchia, Mascio and Covello reveal a common purpose to cause Recchia's automobile to "disappear." A reasonable jury could find that it was Covello who instructed Recchia to wait "two or three days" before reporting the car stolen and this alone would be sufficient to support the finding that Covello knowingly participated in the scheme.

As for Mascio, the evidence showed that he arranged the transaction. He evinced neither surprise nor doubt when Recchia asked him to arrange to make a two year old "perfect" automobile "disappear." Nor did he show surprise that Recchia sought no payment for the car. Moreover, he apparently understood what Covello meant when he said that certain valuable car parts were crushed, because they were "like the Bonne."

Mascio and Covello were businessmen who dealt with automobiles on a daily basis. The jury could reasonably infer that it must have been obvious to them that Recchia would not want his car to "disappear" unless he had insurance to cover the loss and make it financially worthwhile. *Cf. United States v. Starnes,* 644 F.2d at 677 (jury could reasonably infer that businessman who arranged for an arsonist to burn a friend's commercial building knew of the friend's intent to collect insurance money).

## III.

■ At trial David Dabrowski, a former M & J employee, testified that while he worked for Covello he did twelve or fifteen "insurance jobs," some of them under Covello's direct supervision. On such jobs he put identifiable parts (those with serial numbers) in M & J's crusher. Other parts were placed in stock, and the license plates were burned. Dabrowski testified that there was no rush to complete an "insurance job" because, he was told, owners

---

**3.** Further conversation clarified that the

"Bonne" referred to was Recchia's car.

were advised to wait a few days before reporting their cars stolen.[4] Dabrowski could not recall the details of any particular "insurance job."

■ Covello contends that Dabrowski's testimony regarding uncharged crimes—insurance jobs—was improperly admitted to prove that Covello acted similarly in the instant case. He further contends that the court failed to balance the probative value of this evidence against its prejudicial effects and failed to give a cautionary instruction that the testimony was admitted only to prove intent. Finally, he claims that the testimony should have been excluded because it was not "clear and convincing," and because it related to acts of Covello's associates, rather than Covello himself.[5]

### a. Admissibility of Prior Crimes under "Intent" Exception

■ Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

See also United States v. Fierson, 419 F.2d 1020, 1022 (7th Cir.1969). Under this rule, when intent is at issue the court may admit evidence of offenses that bear a strong resemblance to the pattern of the offense charged, or that occurred very shortly before or after the charged offense. Cf. United States v. Marine, 413 F.2d 214, 216–17 (7th Cir.1969), cert. denied, 396 U.S. 1001, 90 S.Ct. 550, 24 L.Ed.2d 493 (1970).

■ Covello contends that it had not been proven that he destroyed Recchia's car, and therefore it was improper to admit testimony regarding his intent. He relies on United States v. Fierson, 419 F.2d 1020 (7th Cir.1969). Fierson, who was an automobile repossessor, was charged with falsely representing himself in the course of his work as an F.B.I. agent. At trial the court admitted evidence that eleven months earlier, Fierson had impersonated an F.B.I. agent under similar circumstances. This Court reversed Fierson's conviction, noting that "[t]he facts of th[e] case, as developed at trial, did not raise even the slightest suggestion that Fierson did the physical act charged but without the requisite willfulness and intent." Id. at 1023.

Covello's reliance on Fierson is misplaced. First, there was ample evidence,

---

**4.** As defendant Covello points out, Dabrowski's testimony regarding what the owners of crushed automobiles were told was hearsay and should have been excluded. However, the only objection raised at trial was "to the generalization and vagueness of that testimony." This objection was sustained. Defendant did not request any limiting instruction pursuant to Rule 51 of the Federal Rules of Criminal Procedure and cannot now claim that such an instruction was required. See United States v. Zeidman, 540 F.2d 314, 318 (7th Cir.1976). Moreover, in light of the ample other evidence implicating defendant Covello in the fraudulent scheme for which he was convicted, any error with respect to this hearsay evidence was harmless. Fed.R.Crim.P. 52.

**5.** Along with these arguments, Covello challenges the government's claim that Dabrowski's testimony was admissible as evidence of Covello's "habit" or "custom" in performing "insurance jobs." On this point Covello is correct.

A habit ... is the person's regular practice of responding to a particular kind of situation with a specific type of conduct. Thus, a person may be in the habit of bounding down a certain stairway two or three steps at a time, of patronizing a particular pub after each day's work, or of driving his automobile without using a seatbelt. The doing of the habitual act may become semi-automatic, as with a driver who invariably signals before changing lanes.

E. Clearly, McCormick on Evidence § 195, at 575 (3d ed. 1984) (citations omitted). While evidence of habit may be admissible under Rule 406 of the Federal Rules of Evidence, a "habit" of commiting the crime charged does not fall under this rubric. "Evidence of these habits would be identical to the kind of evidence that is the target of the general rule against character evidence." Id. at p. 574; see Fed.R.Evid. 404. However, the evidence was admissible under Rule 404(b) of the Federal Rules of Evidence. See infra.

direct and circumstantial, that Covello destroyed Recchia's car.

Second, in contrast to *Fierson*, intent was a critical element of the offense charged in the case at bar. *See United States v. Marine*, 413 F.2d at 216. For this reason, *Fierson* has only limited application in mail fraud cases. *See United States v. Weidman*, 572 F.2d 1199, 1202 (7th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *United States v. Keane*, 522 F.2d 534, 559 (7th Cir.1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976); *United States v. Hutul*, 416 F.2d 607, 624 (7th Cir.1969), *cert. denied*, 396 U.S. 1007, 1012 and 1024, 90 S.Ct. 562, 573 and 599, 24 L.Ed. 499, 504 and 517 (1970).

Third, when the admissibility of Dabrowski's testimony was considered at an evidentiary hearing, Covello's only objections concerned the lack of proper foundation and lack of specificity. He did not object when the court observed that "on the question of intent and pattern and that kind of thing ... normally in a fraud case similar acts are admissible for those purposes." He cannot raise this issue for the first time on appeal. *Cf. United States v. Marine*, 413 F.2d at 217. Nor did the trial court commit reversible error by failing to give a limiting instruction *sua sponte*. *Id.*

**b. Balance of Probativeness and Prejudice**

█ Even if evidence is properly admissible under Rule 404(b), it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. As a corollary, when evidence of prior crimes is introduced, it must be clear and convincing. *See United States v. Feinberg*, 535 F.2d 1004, 1009 (7th Cir.), *cert. denied*, 429 U.S. 929, 97 S.Ct. 337, 50 L.Ed.2d 300 (1976); *United States v. Ostrowsky*, 501 F.2d 318, 321 (7th Cir.1974).

█ This Court has ruled that while written findings are encouraged, they are not required when "[t]he transcript reveals that the trial judge gave consideration to

the question but found that the evidence was properly admissible on the issue of intent." *United States v. Dolliole*, 597 F.2d 102, 106 (7th Cir.), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979). The trial court's observation that evidence of prior crimes is admissible to show intent met this standard. *See generally United States v. Jones*, 438 F.2d 461, 465 (7th Cir.1971) ("[T]he balancing of probative value against prejudice is, in the first instance, left to the sound discretion of the trial judge."), *quoted in United States v. Weidman*, 572 F.2d at 1201–02; *see also Dolliole*, 597 F.2d at 107.

Covello's contention that Dabrowski's testimony was not "clear and convincing" is without merit. *Cf. id.; United States v. Dixon*, 596 F.2d 178, 182 (7th Cir.1979). Likewise, his claim that the testimony concerned only the misconduct of associates, and not Covello himself, is unsupported by the record. Indeed, in the evidentiary hearing regarding Dabrowski's testimony, the Government agreed to limit "the proposed area of inquiry of Dr. Dabrowski to the time that Mr. Covello was his boss." The transcript reveals that this was done.

**IV.**

Covello's two final objections concern alleged hearsay statements admitted against him at trial. Neither warrants extensive consideration. While Dabrowski's testimony included improper hearsay, Covello was not prejudiced by its admission and, in any event, failed to raise an objection on this ground. *See supra* note 4.

As for Recchia's testimony that he was told to wait "two or three days" before reporting his car stolen, this was not hearsay. Regardless of who is alleged to have made the statement, it was not offered to prove the truth of the matter asserted therein. *See* Fed.R.Evid. 801(c). Rather, Recchia's testimony was offered to prove the fact that such a statement was made—and inferentially to prove the intent of the speaker.

The judgments of conviction are affirmed.