George H. BURCHETT, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2000–SC–0179–DG.

Supreme Court of Kentucky.

Jan. 23, 2003.

Rehearing Denied March 20, 2003.

Irvin Halbleib, Jr., Louisville, Counsel for Appellant.

A.B. Chandler, III, Attorney General of Kentucky, Dennis W. Shepherd, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice JOHNSTONE.

As the result of a fatal automobile collision, Appellant, George Burchett, Jr., was convicted by a Green Circuit Court jury of reckless homicide, for which he received a sentence of five years' imprisonment. Burchett appealed his conviction to the Court of Appeals and that court affirmed. We granted discretionary review to consider the only issue raised on appeal: whether evidence that a defendant smoked marijuana on a daily basis is admissible to prove that he smoked marijuana on the day of the collision. For the reasons discussed below, we hold this evidence to be inadmissible; accordingly, we reverse and remand this case to the circuit court.

On December 12, 1997, Sherman Darnell was killed when his vehicle was struck by Appellant's vehicle. Mr. Darnell, traveling on highway 61 in Green County, Kentucky, had the right of way and was not required to stop at the Bloyds Crossing intersection of highway 569. Appellant, traveling on highway 569, failed to stop at the intersection and caused the collision. Although Appellant initially denied running the stop sign, brake marks conclusively indicate that he skidded through the intersection. At the time of the collision, Appellant was on his way to the Taylor County Hospital to visit his girlfriend, Melissa Grider, who had given birth to their child the previous day. Appellant and Grider worked together on the farm owned by David and Dorothy Scott. On the afternoon of the collision, Grider telephoned the Scott residence and left a message for Appellant to come to the hospital as soon as he finished work. Fearing for the health of his child, Appellant left for the hospital after he received the message. The fatal collision occurred shortly afterward, around 3:40 p.m.

Soon after the collision, police trooper Whitlock began his investigation. Trooper Whitlock found an unopened, one-half gallon bottle of vodka in Appellant's vehicle. When questioned, Appellant denied that he had consumed any alcohol that day. Appellant was then taken to Taylor County Hospital, where he was treated for his minor injuries. During his treatment and evaluation at the hospital, Appellant told the emergency room nurse that he drinks "anywhere from one-half to three-fourths of a gallon a day of vodka" and that he smokes marijuana daily, "one joint in the morning and one at night." To the nurse, Appellant denied smoking marijuana the day of the collision. But Appellant later told a lab tech that he smoked "this morning." The treating physician's notes support the lab tech's version of events. A lab test of Appellant's blood later confirmed that Appellant drank no alcohol before the collision. A drug screen of Appellant's urine sample revealed the presence of three substances: benzodiazepines (*e.g.*, Valium), opiates (*e.g.*, Tylenol 3), and tetrahydrocannabinol (THC) (mari-

juana). Unfortunately, the blood sample was insufficient to test for these drugs.

■ Appellant was indicted for second-degree manslaughter. This offense requires proof of a wanton mental state. One way to prove wantonness is to show that the defendant in a vehicle-homicide case was driving while intoxicated. *See Estep v. Commonwealth,* Ky., 957 S.W.2d 191 (1997). Consequently, the prosecutor intended to show that Appellant was under the influence of marijuana or other drugs at the time of his collision with Mr. Darnell. While Appellant did not contest admission of evidence that he smoked a marijuana cigarette the day before the collision, Appellant did contest the admission of any evidence that he had a habit of drinking alcohol or smoking marijuana everyday. Relying primarily on KRE 404(b) and KRE 403, Appellant made a motion in limine to suppress such habit evidence. Just before trial, the court ruled that evidence concerning Appellant's daily drinking would not be admitted. But the court also ruled that evidence of Appellant's daily use of marijuana was admissible.

This evidence was first introduced during the prosecution's direct examination of the emergency room nurse, who read the notes she took after assessing Appellant in the ER: "Patient states I smoke one joint in the morning and one at night." The nurse later read the physician's notes: "[Patient a]dmits to one joint this morning. Two joints daily." Later, Appellant admitted on direct examination that he told a hospital employee that he usually smoked a "joint" at night and in the morning. Appellant also admitted smoking marijuana the day before the collision and taking Tylenol 3 and Valium the day before, and the day of, the collision. Appellant testified that he has had spinal bifida since he was a child and he uses the Tylenol 3 and Valium—for which he does not have a

prescription—to ease the muscle spasms in his leg and the swollen joints in his back. Appellant further admitted that he gave conflicting statements to hospital personnel about whether he smoked marijuana the morning of the collision. But despite his admitted daily marijuana usage, and his conflicting statements at the hospital, at trial he denied that he smoked marijuana the morning of the collision.

Appellant explained that he accompanied his girlfriend to the hospital to induce labor at 5:00 a.m. on December 11. He smoked marijuana while she drove. He stayed at the hospital all day, save one trip to Wal–Mart for baby clothes, and spent the night at the hospital. The next day, the day of the collision, he left the hospital around 6:30 a.m. to go directly to work. He later testified that if he had marijuana that morning, he probably would have smoked it, but he did not. Concerning his inconsistent statements, Appellant testified: "I told somebody that I had smoked some weed earlier [the morning of the collision] but it was the day before. It was on the 11th when I smoked the weed because I didn't have none [on the 12th]." On cross-examination the prosecutor explored Appellant's marijuana use in depth, asking questions like: "[At what age] did you start smoking?" "What's your normal consumption?" The prosecutor finally concluded: "You're just pretty much a one joint morning [sic] and one joint at night, that's just your habit."

The jury was instructed on second-degree manslaughter and reckless homicide. Appellant was convicted of the lesser offense, reckless homicide. He appealed to the Court of Appeals, and now this Court, decrying the admission of evidence of his daily marijuana use. Appellant argues that the evidence was habit evidence, which has been inadmissible in Kentucky courts for at least a century. *See Chesapeake & O.*

*Ry. Co. v. Riddle's Adm'x,* Ky., 72 S.W. 22 (1903).

In *Louisville & N.R. Co. v. Taylor's Adm'r,* Ky., 104 S.W. 776 (1907), it was held: "[N]either side can give in evidence what the custom or practice of either of the parties is. The question is not what they were accustomed to do, but what they did at the time in controversy." This reasoning was subsequently affirmed decades later in *Cincinnati, N.O. & T.P. Ry. Co. v. Hare's Adm'x,* 297 Ky. 5, 178 S.W.2d 835 (1944), *overruled on other grounds, Louisville & N.R. Co. v. Fisher,* 357 S.W.2d 683 (1962). In 1990, the General Assembly sought to permit habit evidence when it enacted KRS 422A.0406, which would have created a state counterpart to the federal rule permitting habit evidence. *See* FRE 406. But KRS 422A.0406 was subject to the approval of this Court and, consistent with our longstanding case law, we rejected that legislation, which was subsequently repealed. 1992 Ky. Acts, ch. 324, § 30. This judicial aversion to habit evidence lead Professor Lawson to accurately remark: "The appeals courts of Kentucky have not looked with favor upon evidence of habit. Such evidence has consistently been declared to be inadmissible under Kentucky law." Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 2.35, at 116 (3d ed. Michie 1993). Indeed, as recently as 1994, this Court approved of the reasoning in *Louisville & N.R. Co. See Johnson v. Commonwealth,* Ky., 885 S.W.2d 951 (1994).

Despite the unanimity of our past decisions, we consider the issue anew. Defining the subject matter is a natural starting point, though, as discussed in the concurring opinion, that is no mean feat. In his treatise on the law of evidence, McCormick attempted the task, both defining "habit" and distinguishing it from "character":

Character and habit are close akin. Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. "Habit," in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, family life, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of habitual acts may become semi-automatic.

FRE 406 Advisory Committee's Note (1972) (quoting McCormick, *Evidence,* § 162, at 340 [now see John W. Strong, 1 *McCormick on Evidence,* § 195, at 584–85 (5th ed. West 1999)]). The admissibility of character evidence in Kentucky is governed by KRE 404(a) and such evidence is generally inadmissible, unless some exception permits it. Habit evidence is viewed as more reliable than character evidence by those jurisdictions that admit habit evidence. The federal courts apply FRE 406, which reads:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Most states have adopted a version of FRE 406, either by rule or by statute. Kentucky is one of the few jurisdictions in the United States that does not currently admit such evidence. Instead of unquestioningly following our sister jurisdictions, we examine the soundness of the rule and the ramifications of adopting it.

While habit evidence has an intuitive appeal, close scrutiny reveals numerous difficulties with its use. These difficulties do more than suggest that the correct course is not to allow such evidence. The most glaring problem is that the introduction of habit evidence violates KRE 403. Questions of admissibility start with KRE 401, which permits evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that a person had a "regular" or "routine" practice of performing some action would meet the requirement of KRE 401. And all relevant evidence, including evidence of a routine practice, is admissible, unless otherwise prohibited. *See* KRE 402. But "relevant[ ] evidence may be excluded if its probative value is substantially outweighed by [1] the danger of undue prejudice, [2] confusion of the issues, ... or by [3] considerations of undue delay, ..." *See* KRE 403. Habit evidence implicates all three of these impermissible results.

It is easy to recognize the prejudice to the defendant if the prosecutor is permitted to attach the label of "habit" to his actions. *E.g.*, John Doe has the "habit" of watching pornographic videos after work in front of his minor daughters. Or, John Doe has the "habit" of beating his wife on the weekends. Simply characterizing the defendant's actions as a "habit" attaches excessive significance in the minds of jurors, as Wright and Graham noted: "Even

if the court thought that the specific instances of conduct had some probative worth so as to be admissible on another ground, *e.g.*, Rule 404(b), the court may feel that permitting the label 'habit' to be attached to the evidence may tend to unfairly enhance its value in the eyes of the jury." 23 Wright and Graham, *Federal Practice and Procedure: Evidence*, § 5273 (1980). The label becomes a scarlet letter. Because of that, courts have correctly been "reluctant to admit evidence that a person is a 'habitual drunk' or has a habit of reckless driving [or smoking a joint every morning] [because] such evidence may be more prejudicial than probative with respect to the issues in the case." *Id.* In this case, the prosecutor used the term in just this inflammatory manner when he declared: "You're just pretty much a one joint morning [sic] and one joint at night, that's just your habit."

Confusion of the issues and delay are additional unwanted, but unavoidable, byproducts of habit evidence. In deciding whether certain conduct constitutes habit, "courts consider three factors: (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct." *United States v. Angwin*, 271 F.3d 786 (9th Cir.2001) (internal citations omitted). In *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir.1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978), the Fourth Circuit clarified this last factor: "[N]o finding is supportable under [FRE] 406[ ] which fails to examine critically the 'ratio of reactions to situations.' Necessarily, as we have seen, regularity of conduct ... requires some comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place." (Footnote omitted). The Advisory Committee under-

scored the idea that "adequacy of sampling and uniformity of response are key factors" for measuring the sufficiency of the evidence. Advisory Committee Notes, FRE 406.

But proof of these occurrences requires numerous collateral inquiries, which leads to delay and jury confusion unacceptable under KRE 403. The original draft of FRE 406 provided that habit could be proven by testimony in the form of an opinion or by specific instances of conduct sufficient to show the habit existed. Congress chose instead to permit courts to develop methods of proof on a case-by-case basis. 2 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, *Federal Rules of Evidence Manual*, § 406.02[5] (8th ed.2002). As Professors Saltzburg, et. al., concluded, opinion testimony is still the best way to prove a habit:

> [T]he best proof of a habit is that someone acted in a particular way at specific and frequent instances, and also that the person did not act otherwise at other similar instances. Probably the best testimony will be by a witness who has personal knowledge of the conduct of the relevant actor on numerous separate occasions.

*Id.* But this sort of collateral-issue testimony can only delay court proceedings and confuse the issue, as the following observations demonstrate:

> So, assuming the [habit] evidence in question to be relevant, I think it should be held incompetent ... because its probative force does not outweigh the inconvenience of a multitude of collateral issues, not suggested by the pleadings, the trial of which would take much time, tend to create confusion and do little good .... Habit is an inference from many acts, each of which presents an issue to be tried, and necessarily involves direct, and naturally invites cross-

examination. The circumstances surrounding each act present another issue, and thus many collateral issues would be involved which would not only consume much time, but would tend to distract the jury and lead them away from the main issue to be decided.

*Levin v. United States,* 338 F.2d 265, 271 (C.A.D.C.1964) (quoting *Zucker v. Whitridge,* 205 N.Y. 50, 98 N.E. 209, 213 (App. 1912)); *see also Simplex, Inc. v. Diversified Energy Systems, Inc.,* 847 F.2d 1290 (7th Cir.1988); Wright and Graham, § 5272 ("[S]ince habit can only be proved by inquiry into instances of alleged habitual conduct, expanding the admissibility of habit evidence would ... lead[ ] to costly collateral inquiries into whether the instances offered to support the habit had indeed taken place.") Even in cases where the habit evidence is ultimately excluded, the attorneys must still prepare the evidence and the judge must still examine it.

This kind of extensive "habit" testimony occurred in *Perrin v. Anderson,* 784 F.2d 1040 (10th Cir.1986). Perrin was killed by two police officers after they attempted to question him about an automobile accident. According to the officers, Perrin attacked them during the questioning. The defendant-officers made an offer of proof that other police officers would testify about numerous violent encounters instigated by Perrin against these officers. Ultimately, four officers were permitted to testify about five such incidents. The Tenth Circuit agreed with the trial court that this evidence was properly admitted as evidence of habit tending to prove that Perrin was the first aggressor. Aside from the fact that the testimony of these officers appears to be impermissible character evidence and not evidence of habit, it is clear that to establish the "habit," four witnesses were examined and cross-examined. Though not discussed in the Court of Ap-

peals' decision, it is highly probable that plaintiff's counsel was permitted to cross-examine the officers about the details of those encounters in order to establish how they were different from the one in question. All of this testimony about habit could have easily distracted the jury from the central issue in the case: Did Perrin attack the police officers and threaten their lives on that particular day?

In the present case, even though Appellant testified about his own habit, there were numerous collateral evidentiary issues related to his marijuana use that were not explored, but likely could have been. These issues could easily have involved other witnesses. Appellant testified that he slept at the hospital the night before the collision and he drove directly to work the next morning. Even if he smoked marijuana "every" morning—a statement that is likely not literally true—he could not smoke it if he did not have any. How much evidence could Appellant introduce that he never kept marijuana in his truck but only at his home? Or that when he spent the night away from home, he did not smoke marijuana in the morning? Could Appellant offer evidence that he did not have marijuana when other important family events occurred, like the death of a parent or sibling? Or that he typically ran out of marijuana on a particular day of the week? Or that he met his supplier on a typical day? This is the type of evidence that delays trials and confuses jurors—an exorbitant price to pay for evidence that fails to even address the critical issue.

Another difficulty that plagues the use of habit evidence is the inexorable tendency for courts to require less and less proof of the habit. Appellant testified that he typically smoked marijuana everyday. If this statement were true, it would be simple to calculate the ratio of reactions to situations—one. But few cases are likely to have such a unitary ratio. This begs the question concerning how many instances of a practice and what ratio of reactions to situations is sufficient to establish proof of a habit. Judges and scholars have yet to offer good answers to this question. Perhaps evidence of four instances would be enough to conclude that the defendant had a habit. *See Whittemore v. Lockheed Aircraft Corp.*, 65 Cal.App.2d 737, 151 P.2d 670, 678 (1944) (evidence that alleged pilot of crashed aircraft was pilot on four previous flights admitted to show habit) (cited with approval in Advisory Committee notes); *see also Chomicki v. Wittekind*, 128 Wis.2d 188, 381 N.W.2d 561, 565 (App. 1985) (Testimony of four female tenants that landlord made sexual advances held sufficient to establish habit. Significantly, the court made no determination of how many female tenants landlord dealt with, i.e., no attempt was made to determine the ratio of reactions to situations.); Wright and Graham, § 5273 (". . . the standard of frequency for the admissibility of habit evidence . . . appears to be weakening"). Indeed, one court has even divined a habit from a single act. *See French v. Sorano*, 74 Wis.2d 460, 247 N.W.2d 182, 186 (1976) (one instance of person hiding money in car sufficient to demonstrate a habit). The tendency of courts to go down this judicial slippery slope further attenuates the efficacy of this already dubious evidence.

Of course one of the most compelling reasons to exclude habit evidence is presented by the facts of this case. Appellant stated that, in addition to smoking marijuana daily, it was his normal routine to drink one-half to three-quarters of a gallon of vodka daily. If habit evidence were admissible, Appellant's drinking practice would have been admissible as substantive evidence that Appellant had likely been drinking on the day of the collision. That

evidence would undoubtedly weigh heavily on the minds of the jurors. But that evidence would have been utterly false. In fact, Appellant did not drink any alcohol that day, as was confirmed by the blood alcohol test, which was the only reason the evidence of Appellant's drinking "habit" was excluded. Unfortunately for Appellant, his blood sample could not be tested and the drug test results could not corroborate his testimony that he did not smoke marijuana that morning, so evidence of his daily smoking was admitted. This scenario ferrets out the dangerous non sequitur that the habit evidence rule encourages: because a defendant regularly performs a particular act, he also did so on this particular occasion. In light of these difficulties, this Court chooses to avoid the introduction of such specious evidence into the courtrooms of this Commonwealth.

█ Having no proper basis for admission, the evidence of Appellant's marijuana use should have been excluded. This error by the trial court was not harmless. Accordingly, we reverse and remand this case to the Green Circuit Court for a new trial consistent with this Opinion.

LAMBERT, C.J., and STUMBO, J., concur.

KELLER, J., concurs in result only by separate opinion.

COOPER, J., dissents by separate opinion, with GRAVES and WINTERSHEIMER, JJ., joining that dissent.

KELLER, Justice, Concurring.

Although I agree with the plurality opinion's ultimate holding in this case, I follow a very different path to that conclusion. And, in fact, as to certain fundamental issues—e.g., whether evidence of a person's habits is actually probative of his or her conduct on a particular occasion—my views diverge sharply from those expressed in the plurality opinion and are aligned quite closely with those held by the dissenters. In particular, while I acknowledge that Justice Johnstone has outlined some valid concerns regarding the potential malleability of the habit label, I believe that those concerns could be allayed with an appropriately narrow definition and/or interpretation of habit, and thus I would support this Court's adoption of an evidentiary rule permitting the introduction of habit evidence for the purpose of proving conforming action on a particular occasion. I vote to reverse Appellant's convictions and to remand this indictment for a new trial, however, because, in my opinion, before Kentucky trial courts may permit the introduction of habit evidence, this Court must amend the Kentucky Rules of Evidence in accordance with the procedures outlined in KRE 1102. In large part, my conclusions in this regard stem from my belief that, through its purposeful rejection of proposed KRE 406, this Court "took the initiative to retain preexisting law ... that evidence of habit is not admissible."[1] Accordingly, I concur with the plurality's con-

---

1. Robert G. Lawson, William S. Cooper, and William H. Fortune, *Kentucky Rules of Evidence* § 2.51 (UK/CLE, 2d.ed., 2002). I recognize that this Second Edition of the monograph, which was published while this case was pending on appeal, also states elsewhere in a new Chapter that "the preexisting common law on habit ... comes into direct conflict with the plain language of KRE 402," *id.* at § 1.27—an observation on the part of the monograph's authors that also may be found elsewhere. *See* Robert G. Lawson, *Interpretation of the Kentucky Rules of Evidence—What Happened to the Common Law?*, 87 Ky. L.J. 517, 576 (1999); Dissenting Opinion, *ante.* The language I quote above, however, was carried over from the first edition, *see* Cooper, Fortune, Lawson & Niehaus, *Kentucky Rules of Evidence*, § D–3, (UK/CLE, 1992), and thus in my view represents a more accurate, con-

clusion that the trial court in this case improperly allowed the Commonwealth to introduce evidence of Appellant's daily marijuana use to prove that Appellant smoked marijuana on the date in question.

In large part, the view expressed by the dissenters should be seen as the progeny of five-year-old dicta in *Stringer v. Commonwealth*[2] suggesting that the admissibility of habit evidence, like so-called "ultimate issue" evidence, was an evidentiary question "left open" when proposed KRE 406 was not adopted with the rest of the Kentucky Rules of Evidence. My vote falls the way it does because I have a different opinion as to the significance of this Court's rejection of proposed KRE 406. Today's dissenters conclude that the Court's "failure to approve" proposed KRE 406 was an act without significance, and suggest that the answer to the allegedly "open question" regarding the admissibility of habit evidence can be found in KRE 401 and KRE 402. I, however, believe that the Court's explicit rejection of proposed KRE 406 demonstrated the Court's intention to continue to exclude habit evidence under the relevancy provisions of the new Kentucky Rules of Evidence. In large part, our divergence of opinion stems from a separate, and perhaps more fundamental, disagreement about the nature and purpose of proposed KRE 406. The dissenters interpret proposed KRE 406, much like *Stringer* interpreted proposed KRE 704, as a provision with little more than tautological significance that failed to "add anything" to the relevancy rules. I disagree, and I find the Evidence Rules Study Commission's com-

mentary to the proposed KRE 406, which states that "Rule 406 *authorizes the introduction of a person's habit,*"[3] important:

> Rule 406 *effectuates a significant change* in the preexisting law of Kentucky. The courts of Kentucky have consistently rejected evidence of habit when offered to prove conforming behavior. *See e.g., Lexington R. Co. v. Herring,* 29 Ky.L.Rptr. 794, 96 S.W. 558 (Ky.1906); *Cincinnati, N.O. & T.P. Ry. Co. v. Hare's Adm'x,* 297 Ky. 5, 178 S.W.2d 835 (Ky.1944). This *change* serves to bring Kentucky law in line with the law of other jurisdictions and with the federal law.[4]

Also illuminating is the Committee's commentary to KRE 401 that states that the broadly inclusionary definition of "relevant evidence" in the Kentucky Rules of Evidence corresponds with the definitions utilized under Kentucky common law and that common law precedent would guide KRE 401 relevancy determinations:

> The definition of relevancy provided by this rule, although more carefully and precisely stated, *is not significantly different from the definition previously used in this state.* The old Kentucky Court of Appeals said that "the term 'relevant' as applied to evidence means that the evidence tends to establish or disprove an issue in litigation." *O'Bryan v. Massey–Ferguson, Inc.,* 413 S.W.2d 891, 893 (Ky.1967), and on an earlier occasion that evidence is relevant when it "tends to make the proposition at issue either more or less probable," *Mason v. Bruner's Adm'r,* 10 Ky.L.Rep. 155 (1888). *Prior rulings on the rele-*

---

temporaneous interpretation of the significance of this Court's rejection of proposed KRE 406.

**2.** Ky., 956 S.W.2d 883 (1997), *cert. denied,* 523 U.S. 1052, 118 S.Ct. 1374, 140 L.Ed.2d 522 (1998).

**3.** Evidence Rules Study Commission, Kentucky Rules of Evidence at 29 (Final Draft 1989) (emphasis added).

**4.** *Id.* at 29–30 (emphasis added).

*vancy of particular types of evidence will serve as useful guideposts for lawyers and judges.*[5]

When considered in the context of the contemporary understanding of these provisions, the Court's rejection of the proposed KRE 406 takes on a light different from that suggested by the dissenters. The Court adopted a definition of "relevant evidence"—KRE 401—that was consistent with existing precedent and that it understood to be guided by its prior jurisprudence, but rejected a specific rule of relevance—proposed KRE 406—that would have changed Kentucky evidence law by permitting the introduction of habit evidence that Kentucky courts consistently had found not relevant. Academics who study the law of evidence interpreted the Court's rejection of proposed KRE 406 as an indication "that the Supreme Court intends to keep Kentucky on its prior course, which would mean that evidence of habit is not admissible to prove conformity therewith on a given occasion."[6] In addition, opinions written and/or joined by members of this Court who participated in the contemporaneous decision to reject proposed KRE 704 reflect that KRE 704's deletion was deliberate and intended to retain then-existing common law as to the admissibility of "ultimate issue" testimony.[7] It requires no great leap of logic to conclude that the Court's rejection of proposed KRE 406 was motivated by a similar desire to preserve the status quo. While today's dissenters suggest that the Court's failure to adopt proposed KRE 406 was an act without independent significance that merely paved the way for the admission of habit evidence under KRE 401 and KRE 402, that suggestion is, in my view, baseless historical revisionism.

Considered in the appropriate context, this Court's rejection of proposed KRE 406 evidenced its intent that habit evidence would remain inadmissible after the adoption of the Kentucky Rules of Evidence. Today's dissenters wish simply to change the law because they have reached a different conclusion as to the relevance of habit evidence. Instead of changing the rules in the middle of the game by reevaluating this Court's previous relevancy determinations, I believe this Court must follow the procedures outlined in KRE 1102 if it wishes to permit the introduction of habit evidence to prove conforming behavior. While I

---

5. *Id.* at 21.

6. Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.35, at 117 (3d ed. Michie 1993). *See also* Richard H. Underwood & Glen Weissenberger, *Kentucky Evidence: 2001 Courtroom Manual* at 123 (Anderson Publishing Co.2000) ("The original draft of the KRE included a provision like FRE 406, which would have permitted the use of habit evidence. However, the Supreme Court deleted the proposed rule, and one can only assume that this is another instance in which the Court is going to steer the old course rather than adopt the majority position exemplified by the FRE.").

7. *See Newkirk v. Commonwealth*, Ky., 937 S.W.2d 690, 694 (1997) (Current Chief Justice Lambert writing for a majority including then-Chief Justice Stephens that "there is no

ambiguity in our decision to eliminate the proposed Rule 704 from the Kentucky Rules of Evidence."); *Stringer v. Commonwealth*, *supra* note 3 at 896 (Lambert, J. concurring) (expressing a similar argument in a concurring opinion joined by then-Chief Justice Stephens); *Id.* at 897 (Stumbo, J., dissenting, joined in part by Justice Lambert):

We do more here than simply interpret KRE 401 and KRE 702. As the *Newkirk* opinion observes, there was no inadvertence in our failure to adopt FRE 704; it was deliberately rejected after thorough consideration. In direct violation of KRE 1102, the majority's opinion does precisely what this Court refused to do when we rejected proposed KRE 704.

*Id.*

would support such an amendment, and I observe that the Evidence Rules Review Commission has recently recommended rule changes to this Court, the Commission has not yet recommended adoption of a rule permitting the introduction of habit evidence. And, until such a proposal comes before the Court, I believe we should apply the Rules of Evidence as previously adopted, understood, and interpreted by the Court, and should not undermine predictability and consistency in the law of evidence by reevaluating common law notions of relevancy that were accepted when the Rules were adopted and that this Court intended to continue after their adoption. Accordingly, I believe the trial court committed reversible error when it allowed the Commonwealth to introduce evidence of Appellant's marijuana "habits" in the face of an unbroken line of precedent from this Court prohibiting the introduction of habit evidence, and I would reverse the Court of Appeals and remand Appellant's indictment to the trial court for a new trial.

COOPER, Justice, Dissenting.

On December 12, 1997, Appellant George H. Burchett, Jr., drove his vehicle past a stop sign without slackening speed and into the Bloyds Crossing intersection of Kentucky highways 61 and 569 in Green County, Kentucky, and collided with a vehicle being driven by Sherman Darnell. Darnell, who had the right of way at the intersection, was resultantly killed. Appellant was indicted for manslaughter in the second degree and, following a trial by jury, convicted of reckless homicide and sentenced to imprisonment for five years. To prove a criminal *mens rea, i.e.,* wantonness or recklessness, as opposed to mere negligence, the Commonwealth sought to prove that Appellant was operating his vehicle under the influence of drugs and/or alcohol. *See Estep v. Commonwealth,* Ky.,

957 S.W.2d 191, 193 (1997) (wanton murder conviction upheld on evidence of the defendant's ingestion of controlled substances and subsequent erratic operation of a motor vehicle). Specifically, the Commonwealth sought to introduce evidence of Appellant's own statements made at the scene of the collision and/or subsequently at the hospital that he "drinks anywhere from one-half to three-fourths of a gallon a day of vodka" (one-half gallon of vodka was found in Appellant's vehicle) and that "I smoke one joint [marijuana cigarette] in the morning and one at night." He also made conflicting statements at the hospital as to whether he had smoked marijuana on the day of the fatal collision.

A laboratory test of a sample of Appellant's blood was negative for alcohol content. However, a drug screen of Appellant's urine sample was positive for Valium, Tylenol 3, and marijuana. The Commonwealth also had evidence that Appellant "had the giggles" on the day of the collision and had left his work duties (stripping tobacco) on numerous occasions that day for short visits to his automobile; and that the known effects of marijuana consumption include a feeling that everything is fine, a better mood, talkativeness, a lessening of motor control, and altered judgment.

Appellant moved *in limine,* KRE 103(d), to suppress his admissions as to his alcohol and marijuana habits on grounds that the statements were either inadmissible character evidence, KRE 404(a), or inadmissible evidence of other crimes, wrongs, or acts, KRE 404(b). In fact, as correctly noted in the plurality opinion, *ante,* Appellant's admissions constituted neither character evidence nor evidence of other crimes, wrongs, or acts, but evidence of habit. In view of the laboratory test results, the trial judge, in weighing probative value against the danger of undue preju-

dice, KRE 403, sustained Appellant's motion to suppress the evidence of his admitted alcohol habit but overruled the motion to suppress the evidence of his admitted marijuana habit.

Obviously, Appellant's admission that he smoked two marijuana cigarettes every day, one in the morning and another at night, was probative of the Commonwealth's theory of the case, especially in view of Appellant's conflicting statements to hospital personnel as to whether he had, in fact, smoked marijuana on the morning of the collision. Nevertheless, for various reasons expressed in three separate opinions, a majority of this Court has concluded, at least in this case,[1] that we should retain our 100–year–old rule excluding, under all circumstances, admission of evidence of an individual's habit as circumstantial proof of his/her conforming conduct on a specific occasion and thereby maintain our status as the only jurisdiction in the United States that does so.

## I. HABIT EVIDENCE VS. CHARACTER EVIDENCE.

In recommending admission of habit evidence, as opposed to character evidence, the Advisory Committee's Notes to Federal Rule of Evidence (FRE) 406 reiterated the oft-quoted paragraph from McCormick's treatise on the law of evidence:

> Character and habit are close akin. Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. "Habit," in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, family life, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of habitual acts may become semi-automatic.

FRE 406 Advisory Committee's Note (1972) (*quoting* McCormick, *Evidence* § 162, at 340 [now see John W. Strong, 1 *McCormick on Evidence* § 195, at 584–85 (5th ed. West 1999) ] ).

Both character evidence and habit evidence are offered as circumstantial evidence of conforming conduct. The element of habit evidence that distinguishes it from character evidence is the element of specificity, as opposed to mere disposition. Thus, evidence that Appellant is a "drunkard" would be character evidence, whereas evidence that he drinks "one-half to three-quarters of a gallon a day of vodka" is evidence of a habit. *See generally* 29 Am. Jur.2d, *Evidence* § 391 (1994). The Advisory Committee noted that "*[a]greement is general that habit evidence is highly persuasive of conduct on a particular occasion.*" FRE 406 Advisory Committee's

---

1. In fact, the majority's claimed adherence to the common law rule excluding habit evidence amounts only to lip service; for, also today, the majority has rendered *Boggess v. Commonwealth*, Ky., No.2001–SC–0263–MR (January 23, 2003), an opinion designated as "not to be published," penned by the author of the plurality opinion in this case, holding that evidence that a deceased person had a "habit" of driving 45 to 55 miles per hour was not only admissible but so reliable that it could be "reasonably relied upon by experts," KRE 703(a), in forming their expert opinions.

Note, *supra* (emphasis added). Again quoting McCormick:

> Character may be thought of as the sum of one's habits though doubtless it is more than this. But unquestionably the uniformity of one's response to habit is far greater than the consistency with which one's conduct conforms to character or disposition. Even though character comes in only exceptionally as evidence of an act, surely any sensible man in investigating whether X did a particular act would be greatly helped in his inquiry by evidence as to whether he was in the habit of doing it.

*Id.*

## II. PROOF OF HABIT.

The National Conference of Commissioners on Uniform State Laws promulgated the first version of the Uniform Rules of Evidence (URE) in 1953. 13A *Uniform State Laws Annotated* 3 (West 1986). As work progressed on the Federal Rules of Evidence, the Uniform Rules were redrafted with a view to conform to the Federal Rules so far as practicable. *Id.* at 5. The final version of the Uniform Rules was promulgated in August 1974 and recommended for adoption in all states. *Id.* at iii. URE 406 ("Habit; Routine Practice") provides:

> (a) Admissibility. Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

> (b) Method of proof. Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

The Federal Rules of Evidence were adopted by Congress in 1975. Pub.L. 93–595, § 1, Jan. 2, 1975, 88 Stat.1932. FRE 406 is identical to URE 406(a). However, Congress did not adopt URE 406(b) and most jurisdictions that have adopted a version of URE 406 have also omitted subsection (b).[2] *See* Jack B. Weinstein and Margaret A. Berger, 2 *Weinstein's Evidence* ¶ 406[05] (Matthew Bender 1989). In jurisdictions that have adopted URE 406(a), but not URE 406(b), the method of proof of habit or routine practice is determined on a case-by-case basis. Typically, it is established by testimony of a knowledgeable witness that there exists such a habit or practice. John W. Strong, 1 *McCormick on Evidence, supra,* § 195, at n. 20. Of course, here, the proof was even stronger since it consisted of the admission of Appellant, himself, the person most knowledgeable of his own habits.

If proof of habit is by specific instances of conduct,[3] there must be evidence of enough such instances to establish the existence of a habit, and the circumstances under which the habit is followed must be present at the time of the conduct sought to be proved. *Id.* § 195, at n. 22, 23; *see also* John Henry Wigmore, 2 *Evidence* § 375 (3d ed. Little Brown & Co.1940). The elements of a habit are generally said to be (1) regularity, (2) specificity, and (3) an involuntary or semiautomatic response. 29 Am.Jur.2d, *Evidence* § 393 (1994). The

---

**2.** See note 5, *infra,* for a list of jurisdictions that have adopted a version of URE 406.

**3.** One authority notes that "one could reasonably testify to having observed habitual behav-ior, but character is almost always a matter of opinion." Charles A. Wright & Kenneth W. Graham, Jr., 22 *Federal Practice and Procedure* § 5233, at 354 (West 1978).

last element, however, does not require that the response be reflexive or nonvolitional,[4] but only that it be uniform. *Steinberg v. Arcilla,* 194 Wis.2d 759, 535 N.W.2d 444, 447 (App.1995) ("a person's 'regular response' need not be 'semi-automatic' or 'virtually unconscious'" in order to be admissible). "[A]dequacy of sampling and uniformity of response are key factors." FRE 406 Advisory Committee's Note, *supra;* Wright and Graham, *supra,* note 3, § 5233. The requirements for admission of habit evidence were summarized as follows in the frequently cited case of *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494 (4th Cir.1977):

> It is only when the examples offered to establish such pattern of conduct or habit are "numerous enough to base an inference of systematic conduct" and to establish "one's regular response to a repeated specific situation" or, to use the language of a leading text, where they are "sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any, of prejudice and confusion," that they are admissible to establish pattern or habit. In determining whether the examples are "numerous enough" and "sufficiently regular," the key criteria are "adequacy of sampling and uniformity of response," or, as an article cited with approval in the note to Rule 406, *Federal Rules of Evidence,* puts it, on the "adequacy of sampling" and the "ratio of reactions to situations."
>
> These criteria and this method of balancing naturally follow from the definition of habit itself as stated in the *Model Code of Evidence:* "Habit means a course of behavior of a person regularly repeated in like circumstances."

*Id.* at 511 (citations omitted). The court went on to explain that "ratio of reactions to situations" means a "comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place." *Id.* at 512.

Thus, in *United States Football League v. National Football League,* 842 F.2d 1335 (2d Cir.1988), evidence that the National Football League disregarded antitrust advice three or four times over a twenty-year period was insufficient to prove a pattern of behavior amounting to habit, *id.* at 1373; in *Weisenberger v. Senger,* 381 N.W.2d 187 (N.D.1986), a brother of a deceased motorist was precluded from testifying that the deceased, who was reported to have been driving over the center line at the time of the fatal collision, had a habit of driving on the extreme right side of the road, because the brother was not shown to have observed the decedent's driving habits with sufficient frequency to be able to testify that such conduct was habitual, *id.* at 191; and in *Waldon v. Longview,* 855 S.W.2d 875 (Tex.App.1993), three prior similar accidents over a six-year period were held insufficient to establish habit. *Id.* at 879.

Specifically with reference to intemperate habits, it was held in *Reyes v. Missouri Pacific R. Co.,* 589 F.2d 791 (5th Cir.1979), that evidence of four prior convictions of public intoxication was insufficient evidence of habit to be probative of intoxication on a given occasion. *Id.* at 794. However, in *Loughan v. Firestone Tire & Rubber Co.,* 749 F.2d 1519 (11th Cir.1985), evidence from three sources, including the plaintiff, himself, that he routinely kept a cooler of beer in his truck during working hours, regularly consumed alcohol during working hours, and "nor-

---

**4.** *But see Levin v. United States,* 338 F.2d 265 (D.C.Cir.1964), a case decided before the adoption of the federal rules.

mally" had something to drink in the early morning hours was sufficient evidence of habit to be probative of his intoxication at the time of his on-the-job injury. *Id.* at 1524. And in *Keltner v. Ford Motor Co.*, 748 F.2d 1265 (8th Cir.1984), evidence that the plaintiff regularly drank a six-pack of beer four nights a week was held to be sufficient evidence of habitual conduct to be probative of his intoxication on the occasion of his injury. *Id.* at 1269.

There is authority for the proposition that, in a criminal case, evidence of a "habit" of committing the charged offense is inadmissible because "[e]vidence of these habits would be identical to the kind of evidence that is the target of the general rule against character evidence." *United States v. Mascio*, 774 F.2d 219, 222 n. 5 (7th Cir.1985) (*quoting* Edward W. Cleary, *McCormick on Evidence* § 195, at 574 (3d ed. West 1984)). As applied to the facts of this case, that would mean that the prosecution could not introduce evidence under the guise of "habit" that Appellant had caused other fatal vehicle collisions in the past. Such evidence would be admissi-

ble only if it satisfied the requirements of KRE 404(b)(1) or (2). For other applications of the "habit" rule, *see generally* John P. Ludington, Annotation, *Habit or Routine Practice Evidence Under Uniform Evidence Rule 406*, 64 A.L.R.4th 567 (1988); George H. Genzel, Annotation, *Admissibility of Evidence of Habit, Customary Behavior, or Reputation as to Care of Motor Vehicle Driver or Occupant, on Question of His Care at Time of Occurrence Giving Rise to His Injury or Death*, 29 ALR 3d 791 (1970).

### III. HABIT EVIDENCE IN OTHER JURISDICTIONS.

In addition to the enactment by Congress of FRE 406, forty-three of the fifty states have adopted URE 406(a) either by rule or by statute.[5] Five additional states have common law rules admitting evidence of habit to prove conduct with some variation. Georgia and New York admit habit evidence by common law under circumstances virtually identical to those described in URE 406(a). *Sams v. Gay*, 161 Ga.App. 31, 288 S.E.2d 822, 824 (1982);

---

**5.** Alabama: Ala.R.Evid. 406;
Alaska: Alaska.R.Evid. 406;
Arizona: Ariz.R.Evid. 406;
Arkansas: Ark.R.Evid. 406;
California: Cal. Evid.Code § 1105;
Colorado: Colo.R.Evid. 406;
Connecticut: Conn.Code of Evid. § 4–6;
Delaware: Del.R.Evid. 406;
Hawaii: Haw.R.Evid. 406;
Idaho: Idaho.R.Evid. 406;
Indiana: Ind.R.Evid. 406;
Iowa: Iowa Code Ann. Rule 5.406;
Kansas: Kan. Stat. Ann. § 60–449;
Louisiana: La.Code Evid. Ann., Art. 406;
Maine: Me.R.Evid. 406;
Maryland: Md. R. Proc. 5–406;
Michigan: Mich.R.Evid. 406;
Minnesota: 50 Minn.Stat. Ann., R.Evid. 406;
Mississippi: Miss.R.Evid. 406;
Montana: Mont.R.Evid. 406;
Nebraska: Neb.Rev.Stat. § 27–406;
Nevada: Nev.Rev.Stat. § 48.059;

New Hampshire: N.H.R.Evid. 406;
New Jersey: N.J.R.Evid. 406;
New Mexico: N.M.R.Evid. 11–406;
North Carolina: N.C.R.Evid. 406;
North Dakota: N.D.R.Evid. 406;
Ohio: Ohio.R.Evid. 406;
Oklahoma: 12 Okla. Stat. Ann. § 2406;
Oregon: Or. Evid.Code, Rule 406;
Pennsylvania: Pa.R.Evid. 406;
Rhode Island: R.I.R.Ev. 406;
South Carolina: S.C.R.Evid. 406;
South Dakota: S.D.R.Evid. § 19–12–8 (Rule 406);
Tennessee: Tenn.R.Evid. 406;
Texas: Tex.R.Evid. 406;
Utah: Utah.R.Evid. 406;
Vermont: Vt.R.Evid. 406;
Virginia: Va.Code Ann. § 8.01–397.1;
Washington: Wash.R.Ev., ER 406;
West Virginia: W.Va.R.Evid. 406;
Wisconsin: Wis. Stat. Ann. § 904.06;
Wyoming: Wyo.R.Evid. 406.

*Halloran v. Virginia Chem., Inc.*, 41 N.Y.2d 386, 393 N.Y.S.2d 341, 361 N.E.2d 991, 995 (1977). Florida admits evidence of habit by common law only if the occurrence of the conforming conduct is corroborated by other evidence. *Nationwide Mut. Ins. Co. v. Jones*, 414 So.2d 1169, 1171 (Fla.Ct.App.1982).[6] (Note that the instant case would satisfy Florida law because the evidence of Appellant's marijuana habit was circumstantially corroborated by the positive drug screen, the evidence of his demeanor and conduct prior to the accident, his statement to a hospital medical technician that "I haven't smoked any pot *since this morning*" (emphasis added), and the treating physician's entry in the medical records that Appellant "[a]dmits to *one joint this morning* (emphasis added).") Illinois admits habit evidence only when there is no eyewitness testimony with respect to the conduct at issue. *Grewe v. West Wash. Cty.*, 303 Ill.App.3d 299, 236 Ill.Dec. 612, 707 N.E.2d 739, 744–45 (1999).[7] Missouri courts have admitted habit evidence, but the precise boundaries of the rule remain unclear. *Hawkins v. Whittenberg*, 587 S.W.2d 358, 363–64 (Mo. App.1979) (discussing same). Nevertheless, Missouri follows Illinois (at a minimum) and admits habit evidence in the absence of eyewitness testimony. *Gerhard v. Terminal R. Ass'n of St. Louis*, 299 S.W.2d 866, 872 (Mo.1957). *See also State v. Hemby*, 63 S.W.3d 265, 269 & n. 2 (Mo.App.2001) (rejecting habit evidence when based on only two prior experiences

and noting that the issue has been addressed rarely in Missouri).

Except for Kentucky, Massachusetts is the only jurisdiction that purports to preclude evidence of habit to prove conforming conduct.

> For the purpose of proving that one has or has not done a particular act, it is not competent to show that he has or has not been in the habit of doing other similar acts.

*Figueiredo v. Hamill*, 385 Mass. 1003, 431 N.E.2d 231, 232 (1982) (*quoting Davidson v. Massachusetts Cas. Ins. Co.*, 325 Mass. 115, 89 N.E.2d 201, 205 (1949)). Nevertheless, the Massachusetts Supreme Court has clarified that habit evidence is not inadmissible in all circumstances.

> Massachusetts draws a distinction between evidence of personal habit and evidence of business habit or custom.... [E]vidence of business habits or customs is admissible to prove that an act was performed in accordance with the habit. For example, this court has upheld the admission of evidence of business habits or customs to prove that a letter had been sent, that an insurance application had not been blank when approved, that the police would have impounded money if found in a fugitive's possession, and that goods unaccompanied with a receipt had not been paid for.

*Palinkas v. Bennett*, 416 Mass. 273, 620 N.E.2d 775, 777 (1993) (internal citations omitted). And in *O'Connor v. SmithKline*

---

6. URE 406(a) permits evidence of habit to prove conduct "whether corroborated or not." Florida has adopted the "routine practice" provision, but not the "habit" provision, of URE 406(a). Fla. Stat. § 90.406. A leading authority on Florida evidence law has opined that prior cases allowing admission of evidence of the habit of an individual, if corroborated by other evidence of the occurrence of the conforming conduct, were not "displaced" by the adoption of the statutory provision and are "still good law." Charles W. Erhardt, *Florida Evidence* § 406.1, at 158 (2d ed.1984).

7. URE 406(a) permits evidence of habit "regardless of the presence of eyewitnesses." Note that other than Appellant, there were no surviving eyewitnesses to the fatal collision in this case.

*Bio–Science Laboratories, Inc.,* 36 Mass. App.Ct. 360, 631 N.E.2d 1018 (1994), the Appeals Court of Massachusetts held that a laboratory technician could testify to her "usual practice" of noting a deviation in a urine sample and the significance of the absence of such a notation on the chain of custody form that she signed, *id.* at 1019, carefully (and somewhat dubiously) characterizing such "usual practice" evidence as admissible evidence of a "business custom" rather than inadmissible evidence of an "individual habit." *Id.* at 1021. Massachusetts also has a statute that admits evidence of a decedent's habits in an action brought against the decedent's personal representative to rebut evidence of statements made or documents drafted by the decedent when living. Mass. Gen. Laws, ch. 233, § 66. Thus, Kentucky is the only jurisdiction that precludes, under all circumstances, admission of evidence of individual habit or of the routine practice of an organization as circumstantial evidence of conforming conduct on a specific occasion.

## IV. HABIT EVIDENCE IN KENTUCKY.

All of the cases applying Kentucky's common law rule of exclusion are more than fifty years old [8] and many involved what is more correctly categorized as character evidence, not habit evidence. *Daw-son v. Shannon,* 225 Ky. 635, 9 S.W.2d 998, 998–99 (1928) ("habit" of drinking); *Louisville & N.R. Co. v. Adams' Adm'r,* 205 Ky. 203, 265 S.W. 623, 627 (1924) (habit of being a "careful and prudent driver"); *City of Madisonville v. Stewart,* Ky., 121 S.W. 421, 423 (1909) ("habit" of drunkenness); *Louisville & N.R. Co. v. Taylor's Adm'r,* Ky., 104 S.W. 776, 778 (1907) ("custom" of reckless driving). Nevertheless, there are other cases where the excluded evidence was properly treated as evidence of habit. *Cincinnati, N.O. & T.P. Ry. Co. v. Hare's Adm'x,* 297 Ky. 5, 178 S.W.2d 835, 838 (1944) (evidence that the deceased driver always looked both ways before entering a railroad crossing, used his lowest gear, and always crossed slowly), *overruled on other grounds, Louisville & N.R. Co. v. Fisher,* Ky., 357 S.W.2d 683 (1962); *Louisville & N.R. Co. v. Gardner's Adm'r,* 140 Ky. 772, 131 S.W. 787, 788 (1910) (evidence that the deceased had never been known to be intoxicated); *Lexington Ry. Co. v. Herring,* Ky., 96 S.W. 558, 560–61 (1906) (evidence that the plaintiff habitually boarded and departed street cars while they were still in motion); *Chesapeake & O. Ry. Co. v. Riddle's Adm'x,* Ky., 72 S.W. 22, 23 (1903) (evidence that the plaintiff had never taken an alcoholic drink in his life).[9]

---

**8.** The plurality opinion, *ante,* incorrectly cites the more recent case of *Johnson v. Commonwealth,* Ky., 885 S.W.2d 951 (1994), as approving the exclusion of habit evidence. Op., at 504. *Johnson* merely states (correctly but not approvingly) that "Kentucky's high court has consistently ruled against the admission of habit evidence." *Id.* at 953. The issue in *Johnson* was not whether evidence of a habit of an individual was admissible to prove the same individual's conduct on another occasion but whether evidence of a habit of a class of persons, *i.e.,* coal truck drivers, was admissible as circumstantial evidence of the conduct of another coal truck driver on another occasion—and *Johnson* correctly held that it

was not. *Id.; see also Miller v. Commonwealth,* Ky., 77 S.W.3d 566, 572 (2002).

**9.** It was also stated in *Jones v. Commonwealth,* 303 Ky. 666, 198 S.W.2d 969 (1947), that "[i]t is not competent to prove a habit or pre-disposition to commit the particular crime or to show that the accused is a criminal generally." *Id.* at 970. However, as in *Mascio, supra,* the evidence at issue in *Jones* was clearly that which today is the subject of KRE 404(b), *i.e.,* evidence in a trial for uttering a forged check that the defendant had, on three prior occasions, uttered other forged checks with different payors and payees at different places and different times—evidence arguably admissible to prove intent under

The evidence excluded in those cases would satisfy today's definition of relevant evidence, *i.e.*, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Under KRE 402, all relevant evidence is admissible unless excluded by "the Constitutions of the United States and the Commonwealth of Kentucky, by acts of the General Assembly of the Commonwealth of Kentucky, by these rules, or by other rules adopted by the Supreme Court of Kentucky." Evidence of habit to prove conforming conduct is not excluded by any constitutional provision, statute, rule of evidence, or rule of this Court; and KRE 402 "contains no exception for preexisting case law." *Garrett v. Commonwealth*, Ky., 48 S.W.3d 6, 13 (2001). Presumably, KRE 402 has already superseded our common law exclusionary rule with respect to evidence of habit and routine practice. If not, then we should take this occasion to overrule our outdated precedents and bring Kentucky into the mainstream of American jurisprudence.

## V. EFFECT OF FAILURE TO ADOPT PROPOSED KRE 406.

If I am reading his separate opinion correctly, Justice Keller agrees that our common law rule excluding evidence of habit and routine practice is untenable but is concerned that a decision of this Court to depart from that common law rule would circumvent the KRE 1102 procedure for amending the adopted rules of evidence.

The Committee that drafted the proposed Kentucky Rules of Evidence recommended adoption of a proposed rule identical to URE 406(a) and FRE 406. Evidence Rules Study Committee, Final Draft, at 29–30 (1989). Pursuant to that recommendation, the 1990 General Assembly enacted KRS 422A.0406, adopting proposed KRE 406, 1990 Ky. Acts, ch. 88, § 16, subject only to the approval of the Supreme Court of Kentucky. *Id.* § 93. Because the 1991 Supreme Court disapproved the adoption of proposed KRE 406, the 1992 General Assembly subsequently repealed KRS 422A.0406. 1992 Ky. Acts, ch. 324, § 30.[10] Thus, both the General Assembly and the Evidence Rules Study Committee (three of whose members presently serve on the Evidence Rules Review Commission, KRE 1103) voted to adopt proposed KRE 406. Only this Court disagreed. However, the 1991 Court did not amend proposed KRE 406 to codify the existing common law. The significance of that fact is exemplified by the numerous instances where the Court did amend or even rewrite other proposed rules to codify pre-existing law or, in some instances, to modify both the proposed rule and pre-existing law. *See* 1992 Ky. Acts, ch. 324 for the 1992 amendments of the proposed rules. With very few exceptions, those amendments were initiated by the 1991 Court, not the 1992 General Assembly. The following are only a few examples of those amendments (deleted language indicated by strikeout; added language in brackets):

The Court amended proposed KRE 103(a)(1), pertaining to preservation of error, to insert language from pre-existing procedural rules, *i.e.*, CR 46 and RCr 9.22,

---

KRE 404(b)(1), but insufficient to establish a habit for the purpose of proving conforming conduct.

**10.** Pursuant to 1992 Ky. Acts, ch. 324, § 34, the amended version of KRS Chapter 422A was renumbered and transferred to the Kentucky Rules of Evidence (KRE). *See* Compiler's Notes to KRS Chapter 422A.

that required an objecting party to state the specific ground for objection only if requested by the court, *viz:*

> In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record [and upon request of the court] stating the specific ground of objection, if the specific ground was not apparent from the context.

1992 Ky. Acts, ch. 324 § 1(a).

The Court also amended proposed KRE 403 to limit the circumstances under which relevant evidence could be excluded, *viz:*

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of ~~unfair~~ [undue] prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, ~~waste of time,~~ or needless presentation of cumulative evidence.

*Id.* § 3.

The Court amended proposed KRE 407, pertaining to subsequent remedial measures, to ensure that the rule would not apply to criminal or products liability cases, *viz:*

> When, after an event, measures are taken which, if taken previously, would have made an injury or harm allegedly caused by the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence ~~or culpable conduct~~ in connection with the event. This rule does not require the exclusion of evidence of subsequent measures [in products liability cases or] when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

*Id.* § 6.

The Court essentially rewrote proposed KRE 504, the husband-wife privilege, to completely change its intended meaning, *viz:*

> (a) Spousal testimony ~~in criminal proceedings.~~ The spouse of ~~an accused~~ [a party] has a privilege to refuse to testify against the ~~accused spouse~~ [party] as to events occurring after the date of their marriage.
> [ (b) Marital communications. An individual has a privilege to refuse to testify and to prevent another from testifying to any confidential communication made by the individual to his or her spouse during the marriage. The privilege may be asserted only by the individual holding the privilege or by the holder's guardian, conservator, or personal representative. A communication is confidential if it is made privately by an individual to his or her spouse and is not intended for disclosure to any other person.]
> . . .

*Id.* § 9(1), (2).

And the Court substituted Kentucky's pre-existing "Rule in Queen Caroline's Case," *Fisher v. Duckworth,* Ky., 738 S.W.2d 810, 815 (1987), *i.e.,* CR 43.08, with respect to laying the foundation for admission of a witness's prior statement, for proposed KRE 613, which would have adopted the more liberal federal rule, *viz:*

> (a) Examining witness concerning prior statement. ~~In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.~~ [Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party

can present them; and, if it be in writing, it must be shown to the witness, with the opportunity to explain it. The court may allow such evidence to be introduced when it is impossible to comply with this rule because of the absence at the trial or hearing of the witness sought to be contradicted, and when the court finds that the impeaching party has acted in good faith.]

(b) ~~Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.~~ This provision does not apply to admissions of a party-opponent as defined in KRE 801A.

1992 Ky. Acts, ch. 324, § 16(1), (2).

The 1991 Court could also have amended proposed KRE 406 so as to codify our existing common law rule excluding evidence of habit or routine practice merely by changing one word, *e.g.:*

> Evidence of habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is ~~relevant~~ [inadmissible] to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

However, it chose not to do so.

Except for Rules 401 and 402, the rules of relevancy in Article IV of the Kentucky Rules of Evidence, if not rules of exclusion, are certainly rules of limitation, *Huddleston v. United States*, 485 U.S. 681, 687, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771

(1988), *i.e.*, exceptions to the general rule of admissibility of relevant evidence enunciated in Rule 402. URE 406(a), however, is a rule of admissibility, not of exclusion or limitation, and its adoption as FRE 406 obviously was intended to emphasize that the previous common law rule of exclusion then being followed in some jurisdictions, *e.g., Levin v. United States, supra,* note 3, had been abrogated by the adoption of FRE 402. Proposed KRE 406 would have accomplished the same purpose. However, a decision not to adopt a rule specifically abrogating the common law does not equate to a decision to adopt a rule codifying the common law, especially where, as here, the common law rule was apparently abrogated by another adopted Rule, *i.e.,* KRE 402. "[W]hen there is an adopted Rule of Evidence that speaks to the contested issue, the adopted Rule occupies the field and supersedes the former common law interpretation." *Garrett, supra,* at 14, *citing Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993). However, where there is no adopted Rule, the issue either remains open for common law development, *Stringer v. Commonwealth,* Ky., 956 S.W.2d 883, 891–92 (1997), or is considered subsumed in the general rule of inclusion, *i.e.,* Rule 402. *United States v. Abel,* 469 U.S. 45, 50–51, 105 S.Ct. 465, 468, 83 L.Ed.2d 450 (1984) (although no specific federal rule speaks to the inclusion of evidence of bias for impeachment purposes, such is admissible under FRE 402).

By simply refusing to approve proposed KRE 406, as opposed to amending it to codify the common law rule of exclusion, the 1991 Court may have recognized that KRE 406 was redundant in light of KRE 402; or, more likely, it may have intended to simply leave the door open for future common law development in this area of

the law.[11] If faced with the case *sub judice*, a majority of the 1991 Court may well have decided it the same way that the plurality opinion, *ante*, now decides it—by reaffirming our antiquated common law precedents. However, Justice Leibson, a member of the 1991 Court, also famously wrote:

> The common law is not a stagnant pool, but a moving stream. It seeks to purify itself as it flows through time. The common law is our responsibility; the child of the courts. We are responsible for its direction.

*Hilen v. Hays*, Ky., 673 S.W.2d 713, 717 (1984) (citations omitted).

If the majority of the members of this Court now believe that the time has come to reconsider the admissibility of habit evidence and depart from the fallacy of our old cases, the 1991 Court left the door open to do so. Professor Lawson queried whether the adoption of the Kentucky Rules of Evidence abrogated all common law evidentiary rules. *See* Robert G. Lawson, *Interpretation of the Kentucky Rules of Evidence—What Happened to the Common Law?*, 87 Ky. L.J. 517 (1998–99).[12] If so, then this case is governed by KRE 402 and we should hold that habit evidence, if relevant and competent, is admissible. If not, and that obviously is the premise of the plurality opinion, *ante*, then this Court has the authority to change the direction of the common law by overruling those precedents that are inconsistent with modern (and virtually unanimous) legal thought. *Cf. Stringer, supra*, at 891–92 (discarding our prior common law rule ex-

cluding "ultimate issue" testimony in favor of the modern majority rule).

## VI. ADMISSIBILITY OF HABIT EVIDENCE IN THIS CASE.

Like any evidence, evidence of habit or routine practice is admissible only if relevant to a fact in issue. *Compare Gregory v. State*, 9 Ark.App. 242, 657 S.W.2d 570, 571 (1983) (in a trial for receiving stolen property, marijuana habit of witness who allegedly sold stolen property to defendant was not relevant to prove any issue in the case). Thus, whether Appellant smoked marijuana on the morning of the collision would not have been relevant to prove *that* he drove past the stop sign and into the intersection at Bloyds Crossing without slackening his speed. However, it was relevant to prove the element of a criminal *mens rea* of wantonness or recklessness, *i.e.*, to prove *why* he ran the stop sign and drove into the intersection without slackening his speed. The Commonwealth's theory was that Appellant had smoked marijuana on the morning of December 12, 1997, and that his operation of a motor vehicle under the influence of the combined effects of marijuana, Valium, and Tylenol 3 amounted to wanton or reckless conduct. His admitted habit of smoking two marijuana cigarettes every day, one in the morning and another at night, was highly probative of that theory.

The instances of past conduct ("every morning") were "numerous enough to base an inference of systematic conduct." *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 511 (4th Cir.1977) (quotation omitted). And since the habit was identi-

---

11. *See* Erhardt, *supra*, note 6, opining that Florida's enactment of a statute adopting the "routine practice" provision, but not the "habit" provision, of URE 406(1), did not affect Florida's common law rule admitting evidence of habit if corroborated by other evidence.

12. Professor Cleary, the Reporter for the FRE Advisory Committee, wrote that "under the Federal Rules, no common law of evidence remains." Edward W. Cleary, *Preliminary Notes on Reading the Rules of Evidence*, 57 Neb. L.Rev. 908, 915 (1978).

fied by occurrence, *e.g.*, "every morning," as opposed to circumstance, *e.g.*, "when stripping tobacco," there is no issue here with respect to similarity of circumstances or ratio of reactions to situations. Nor is there any issue here as to either competency or the knowledge of the person reporting the habit. The evidence was in the form of an admission by Appellant, himself, KRE 801A(b)(1), who was the person most knowledgeable of his own habits.

Even if relevant and competent, evidence of a habit or routine practice, like other relevant evidence, is subject to exclusion under KRE 403 if its probative value is substantially outweighed by the danger of undue prejudice.[13] The trial judge concluded that the probative value of the evidence of Appellant's alcohol habit was substantially outweighed by its prejudicial effect (because his blood tested negative for alcohol content) but that such was not the case with respect to the evidence of his marijuana habit (because his urine tested positive for marijuana and because of his prior conflicting statements with respect to whether he had or had not smoked marijuana on the day of the accident). I discern no abuse of discretion with respect to either of these KRE 403 rulings. *English, supra,* note 13, at 945.

Accordingly, I dissent and would affirm the judgment of the Green Circuit Court in all respects.

GRAVES and WINTERSHEIMER, JJ., join this dissenting opinion.

---

**13.** The plurality opinion, *ante,* seems to assert that *all* evidence of habit or routine practice is *automatically* excluded under KRE 403. That assertion turns KRE 403 on its head; for the premise of the rule is that evidence that is otherwise relevant and *admissible* can be excluded if the trial judge, *in his/her discretion,* determines that it should be excluded because its prejudicial effect substantially outweighs its probative value. *Commonwealth v. English,* Ky., 993 S.W.2d 941, 945 (1999). Here, the majority of the Court holds that evidence of habit or routine practice is *always inadmissible,* thus, KRE 403 does not come into play.